LAW OFFICE OF FRANCIS J. FLYNN, JR.
Francis J. Flynn, Jr.
422 South Curson Avenue
Los Angeles, California 90036-3169
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

*Attorneys for Plaintiff and the Proposed Class*

*[Additional Counsel on Signature Page]*

## UNITED STATES OF AMERICA
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| JOHN DINAN, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SANDISK LLC, <br><br> Defendant. | Case No.: 5:18-cv-5420 <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> **(1) BREACH OF CONTRACT** <br> **(2) VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200, *ET SEQ.*** <br> **(3) VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT, CALIFORNIA CIVIL CODE § 1750, ET SEQ.** <br> **(4) FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS & PROFESSIONS CODE § 17500, *ET SEQ.*** <br><br> **JURY TRIAL DEMANDED** |

COMES NOW Plaintiff John Dinan (hereinafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, and hereby bring Plaintiff's

1

Class Action Complaint against SANDISK LLC, (hereinafter referred to as "Defendant" or "Sandisk", alleging, upon personal knowledge as to Plaintiff's individual actions and upon information and belief and/or counsel's investigations as to all other matters, the following:

## I.    INTRODUCTION

1.    This class action seeks compensatory damages, restitution, disgorgement of profits, costs of suit, actual damages, attorneys' fees, costs, declaratory judgment, injunctive relief, and any other relief that this Court deems just and proper arising from Defendant's breach of contract, and unfair, unlawful, unethical, fraudulent, misleading, unconscionable, and/or deceptive business policies and practices related to Defendant's manufacturing, advertising, marketing, and/or sales of its flash memory in the form of USB[1] flash drives, also known as thumb drives, data sticks, JumpDrives, pen drives, gig sticks, flash sticks, disk keys, memory sticks, USB sticks, or USB memory.

2.    Plaintiffs shall refer to the SanDisk Products at issue in this suit as "USB Drives" or "USB Flash Drives".

## II.    PARTIES

### A.   Plaintiff

3.    Plaintiff John Dinan is a citizen of the state of California, residing in the city of Los Angeles, California.  Plaintiff purchased a SanDisk 64 GB iXPAND Flash Drive USB 3.0.

### B.         Defendant

4.     SanDisk LLC is a leading provider of flash memory products like PCIe Flash, SSDs, server storage solutions and removable memory cards and USB drives.[2]   Defendant SanDisk LLC is a limited liability corporation formed under the laws of the state of Delaware,

---

[1] "USB" refers to a Universal Serial Bus port in a computer, where the drive is inserted into the computer.
[2] https://www.sandisk.com/about/company

COMPLAINT
Case No.:

having its principal place of business at 5601 Great Oaks Parkway, San Jose, California 95119. The sole member of Defendant SanDisk is Western Digital Technologies, Inc.  Western Digital Technologies, Inc. is organized under the laws of Delaware and whose principal place of business is located at 5601 Great Oaks Parkway, San Jose, California 95119.  Western Digital Technologies Inc. is, therefore, a citizen of the States of Delaware and California.  Sandisk LLC is, therefore, a citizen of the States of Delaware and California.  Sandisk LLC can be served through its registered agent at Corporation Service Company Which Will Do Business in California as CSC – Lawyers Incorporating Service 2710 Gateway Oakes Drive, Suite 150N Sacramento California 95833.  Western Digital Technologies, Inc. is a wholly owned subsidiary of Western Digital Corporation.

## III.   JURISDICTION & VENUE

5.     This Court has original jurisdiction over this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because (a) the aggregated claims of the putative members of the Classes exceed $5 million, exclusive of interest and costs; (b) there are at least 100 members of the putative Classes; and (c) at least one of the members of each of the proposed Classes is a citizen of a different state than Defendant.

6.     This Court has personal jurisdiction over Defendant because Defendant, directly or through an agent, has transacted business and engaged in tortious and fraudulent conduct, by affirmative acts or omissions, in the State of California such that it reasonably anticipated being subject to personal jurisdiction before the courts of this State.  Defendant's agents have advertised, marketed, and/or sold USB Flash Drives in California, including in this District.  Defendant has sufficient minimum contacts with this State, and/or sufficiently availed itself to the markets of this State through its advertising, marketing, and sale within this State to render the exercise of

COMPLAINT
Case No.:

jurisdiction by this Court permissible.  Further, this Court has personal jurisdiction over Defendant because its Internet websites allow consumers to order and ship products anywhere in the United States, including this District.[3]  Defendant conducts business throughout the United States, including this District.

7.     Venue is proper in this Court because Defendant does business and maintains its headquarters in this District.

## IV.    GENERAL FACTUAL ALLEGATIONS

### OVERVIEW OF USB DRIVES

8.     USB Drives provide supplemental memory storage for electronic files used in a computer or other electronic device by inserting the USB Drive into the USB port.  After insertion, the computer's operating system recognizes the USB Drive as a storage medium and allows the user to store files onto the USB Drive.

9.     Every USB Drive manufactured, advertised, marketed, and/or sold by Defendant has a specific, particular memory capacity for storing digital information.

10.     During the Class Period, Defendant advertised, marketed, and/or sold a number of USB Flash Drives in varying sizes, including what it represented as memory sizes of 256 GB, 128 GB, 64 GB, 32 GB, 16 GB[4] and 8 GB.[5]

11.     At all relevant times, Defendant intentionally misrepresented the amount of the memory storage contained on the USB Flash Drives in their marketing, advertising, and/or packaging of their USB Flash Drives.

---

[3]  *See, e.g.,*  https://shop.sandisk.com/store?Action=pd&Cruzer-Fit-USB-Flash-Drive-8GB=&Locale=en_US&SiteID=sdiskus&productID=235933700
[4]  https://www.sandisk.com/home/usb-flash (last visited June 22, 2018).
[5]  https://www.amazon.com/s/gp/search/ref=sr_nr_p_n_size_browse-bin_2?fst=as%3Aoff&rh=n%3A172282%2Cn%3A541966%2Cn%3A1292110011%2Cn%3A3151491%2Ck%3Asandisk+8+gb+usb+flash+drive%2Cp_n_size_browse-bin%3A1259714011%7C1259713011&keywords=sandisk+8+gb+usb+flash+drive&ie=UTF8&qid=1529688631&rnid=1259751011 (last visited June 22, 2018).

COMPLAINT
Case No.:

4

**WHAT IS A GB?**

12.     This case stems from Defendant's intentional misrepresenting the storage capacity, which are represented in "GBs," of its USB Flash Drives. GB is the acronym for Gigabyte (1024 megabytes).[6]

13.     Merriam Webster Diction defines a "gigabyte" as 1024 megabytes or 1,073,741,824 bytes."[7]

14.     Dictionary.com defines a "gigabyte" as a measure of storage capacity equal to $2^{\wedge 30}$ (1024) bytes."[8]

15.     The Oxford Dictionary defines a Gigabyte as "A unit of information equal to one thousand million (10 ) or, strictly, $2^3$ bytes."[9]

16.     The average consumers' understanding and measurement of storage capacity and file size is consistent with the acronym and dictionary definitions as set forth above.

17.     The dictionary definition of Gigabyte is also consistent with virtually all computers' operating systems' calculation and representation of file sizes and storage needs.

18.     In particular, and as explained in more detail herein, computer users are presented with the base-two counting system whenever they look at the size of files stored on their hard disk drive or storage medium, whether they are using the Windows, Linux, Apple (except Mac OS X version 10.6 and later) or any other operating systems.

19.     For example, users of the Microsoft Windows operating system (who comprise approximately 97% of all computer users) will see a list of files contained in a particular folder, showing the total size of the folder and the file size of each file as a number of "KB" or kilobytes.

---

[6] According to https://acronyms.thefreedictionary.com/GB,
[7] https://www.merriam-webster.com/dictionary/gigabyte (last visited June 22, 2018).
[8] http://www.dictionary.com/browse/gigabyte (last visited June 22, 2018).
[9] See, https://en.oxforddictionaries.com/definition/gigabyte (last visited June 22, 2018).

COMPLAINT
Case No.:

If the user clicks on the "properties" for a particular file, the user will then see the same size given in "MB" or megabytes and "bytes."

20.     Each of these numbers is computed using the base-two system. For example, if a particular file appears in the list as "2,088 KB," the properties screen will show "2.03 MB (2,138,1124 bytes)."[10]

**DEFENDANT'S UNFAIR, UNLAWFUL, AND/OR**

**DECEPTIVE BUSINESS PRACTICES**

21.     As a matter of fact, Defendant's USB Flash Drives contain materially less GBs than stated. Defendant fails to meaningfully, adequately, and/or conspicuously disclose, however, that its USB Flash Drives contain materially less GBs than the number of GBs stated on the advertising and/or packaging.

22.     The difference between Sandisk's USB Flash Drives' advertised memory and their actual memory is significant as set forth in the below chart:

| Number of GBs Advertised | Actual Storage Capacity (GBs) | Difference in GB between Advertised Space and Actual Space | Difference (Percentage) |
|---|---|---|---|
| 4 | 3.73 | 0.27 | 0.0675 |
| 8 | 7.45 | 0.55 | 0.06875 |
| 16 | 14.9 | 1.1 | 0.06875 |
| 32 | 29.8 | 2.2 | 0.06875 |
| 64 | 59.6 | 4.4 | 0.06875 |
| 128 | 119.21 | 8.79 | 0.068671875 |
| 256 | 238.42 | 17.58 | 0.068671875 |

---

[10] The reason is that 2,138,112 bytes divided by 1,024 ($2^{10}$) equals 2,088 KB, and 2,088 kilobytes divided by 1,024 equals 2.03 MB. If the number had been computed in base-ten instead of base-two then 2,138,122 bytes would be shown as 2,138 KB instead of 2,088 KB, and as 2.14MB instead of 2.03MB.

COMPLAINT
Case No.:

23.     As set forth above, the difference in GBs in the amount advertised and the actual space received increases the more storage Defendant promises.

24.     To further mislead Plaintiff and the Class and Subclass, Defendant sells USB Flash Drives in sizes that are consistent with the base-two system, i.e., it sells USB Flash Drives in 8 GB, 16 GB, 32 GB, 64 GB, 128 GB, and 256 GB sizes.  This is done to mislead the public because Defendant wants the public to assume that the size of the USB Drive that they are purchasing is consistent with the dictionary definition, the average consumer's understanding, and the way that computers calculates storage space.

25.     Plaintiff's situation is demonstrative. Plaintiff was shocked to learn that there is approximately 6.7% less storage capacity on the device than what Defendant conspicuously advertised to him.

26.     Moreover, this is not a matter of merely getting less than what one paid for. For example, a 256 GB USB Flash Drive is inadequate to expand the PlayStation storage capacity because PlayStation requires 250 GB to expand its storage capacity and Defendant's 256 GB USB Flash Drive only contains 238.42 GBs of storage space. Thus, someone purchasing a 256 GB USB Flash Drive for that purpose – a size that would outwardly appear to be perfect for that application – would be unable to use it at all.

## DEFENDANT ASSIGNS AN ARBITRARY DEFINITION TO GB IN EXTREMELY FINE PRINT ON THE BACK OF THE PACKAGING

27.     On the front of Defendant's packaging, Defendant conspicuously represents in font that is larger and in a different color than surrounding text and is separate and apart from other words, the number of GBs the USB Flash Drive purportedly contains.

28.     Defendant does not meaningfully, adequately, or conspicuously disclose that

COMPLAINT
Case No.:

Defendant's product actually contains at least 6.7% less storage than it represents on the front of the packaging.  All Defendant does is place fine print on the back of its packaging that arbitrarily defines GB to mean less than 1.024 billion bytes, i.e., one billion bytes.

29.     Thus, Defendant knows that a GB is 1.024 billion bytes, but defines it in fine print as one billion bytes, thereby shorting the consumer out of at least 6.7% storage.

30.     Defendant does not even direct consumer's attention to the back of the packaging to the inadequate "disclosure."

**DEFENDANT'S METHOD OF DETERMINING MEMORY SIZE IS INCONSISTENT WITH THE BINARY STANDARD ON WHICH ALL DIGITAL FILES ARE BASED**

31.     In binary computing, a computer counts in base-two. Each column goes only from 0 to 1. Thus, each column represents a factor of 2, such as $2^{\wedge 1}$, $2^{\wedge 2}$, $2$, $2^{\wedge 3}$, $2^{\wedge 4}$, $2^{\wedge 5}$, and so forth

32.     Except for the file manager of Mac OS X version 10.6 and later, all computer/digital processors sold everywhere report available storage using base-two calculations. These include personal computers, PDAs, digital cameras, cellular telephones, MP3 players, gaming systems such as PlayStation and Xbox, and all other devices that use flash memory in one form or another.

33.     Memory storage is designated in sizes that equal an exponent of the number two. Every group of eight ($2^{\wedge 3}$) bits is called a "byte."  The term "byte" was used instead of "bite" to avoid confusion if the "e" was inadvertently left off the end.

34.     Upon information and belief, Defendant later changed its method to be able to overstate the amount of memory contained on its USB Flash Drive.

**PLAINTIFF WAS MISLED AND DECEIVED BY DEFENDANT**

35.     Plaintiff purchased a Sandisk USB Flash Drive primarily for personal, family, or

8

COMPLAINT
Case No.:

household purposes.

36.    Plaintiff has been damaged as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent business practices as set forth more fully throughout the complaint.

37.    At all relevant times, Plaintiff reasonably believed that the USB Flash Drives could hold data in the amount of GBs represented on the advertisements and/or packaging of the USB Flash Drives that was consistent with the dictionary definition, file size representations, and computer operating system's method of interpreting GBs.

38.    Plaintiff did not know, nor should Plaintiff have reasonably known, that Defendant intended that GB to mean something materially less than its common usage as defined above.

39.    When Plaintiff made the decision to purchase Sandisk's USB Flash Drive, Plaintiff believed it could save the number of GBs of data on the USB Flash Drive packaging.  Instead, Plaintiff was only able to save approximately 6.7% fewer GBs of data on the USB Flash Drive.

### DEFENDANT'S CONDUCT IS INTENTIONAL
### AND LEAVES CONSUMERS UNPROTECTED

40.    Defendant could have either (a) used the common meaning of GB and represented the number of GBs being nearly 6.7% less; or (b) Defendant could have disclosed on the front of the package in a meaningful way that the amount of GBs represented will appear as 6.7% less when connected to their computers.

41.    Because Defendant sold the product as it did during the class period, consumers, including Plaintiff, the Class, and the Subclass, were duped into paying more for the USB Flash Drives than they would have paid had Plaintiff, the Class, and the Subclass known the truth.

### DEFENDANT'S MISLEADING CONDUCT LEADS TO SIGNIFICANT LOSSES BY

COMPLAINT
Case No.:

CONSUMERS NATIONWIDE AND HARMS COMPETITORS

42.     As set forth above, Defendant overstates the storage capacity of its USB Flash Drives.  If Defendant meaningfully, adequately, and/or conspicuously disclosed the true storage size of its USB Flash Drives, Plaintiff, the Class, and the Subclass would not have been purchased Defendant's USB Flash Drives or would have only purchased Defendant's USB Flash Drives at a lower price.

43.     The amounts overpaid can be computed by, among other things, comparing the prices that Defendant charges for different sized USB Flash Drives, which reflects their incremental price for each additional unit of memory storage.

44.     For example, Defendant sells its "16 GB" hard drive for $19.99.  Since the 16 GB USB Flash Drive really only contains 14.9 GBs of memory, the cost per GBs is $1.34 per GB.

45.     Thus, for each USB Flash Drive device purchased, Plaintiff and the Class and Subclass Members were damaged as follows:

| Number of GBs Advertised | Actual Storage Capacity (GBs) | Difference in GB between Advertised Space and Actual Space | Approximate Amount of Damage to Consumer |
|---|---|---|---|
| 4 | 3.73 | 0.27 | $0.36 |
| 8 | 7.45 | 0.55 | $0.74 |
| 16 | 14.9 | 1.1 | $1.47 |
| 32 | 29.8 | 2.2 | $2.95 |
| 64 | 59.6 | 4.4 | $5.90 |
| 128 | 119.21 | 8.79 | $11.78 |
| 256 | 238.42 | 17.58 | $23.56 |

46.     Defendant does not meaningfully, adequately, and/or conspicuously make understandable disclosures to Plaintiff, the Class or Subclass.

VI.     CLASS ACTION ALLEGATIONS

10

47.     Plaintiff brings this action and seek to certify and maintain it as a class action under Fed. R. Civ. P. 23, individually and on behalf of the following Class:

**The Class (the "Class")**

All individuals and entities in the United States who purchased a Sandisk USB Drive within the applicable statutes of limitations preceding the filing of this lawsuit.

**The Subclass (the "Subclass")**

All individuals in the State of California who purchased a Sandisk USB Drive within the applicable statutes of limitations preceding the filing of this lawsuit.

48.     Excluded from the Class are: (a) Defendant and any entities in which Defendant has a controlling interest; (b) Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (c) All current employees of Defendant; (d)  The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case; (f) All governmental entities; (g) anyone who makes a timely election to be excluded from the Class.

49.     Excluded from the Subclass are: (a) Defendant and any entities in which Defendant has a controlling interest; (b) Any entities in which Defendant's officers, directors, or employees are employed and any of the legal representatives, heirs, successors, or assigns of Defendant; (c) All current employees of Defendant; (d)  The Judge(s) to whom this case or any transferred case is assigned and any member of the Judges' immediate family and any other judicial officer assigned to this case or any transferred case; (e) Any attorneys representing Plaintiff or the Subclass; (f) All governmental entities; (g) anyone who makes a timely election to be excluded from the Class.

50.     Plaintiff reserves the right to modify or amend the definitions of the proposed

11

Class or Subclass and/or to add more Subclasses if necessary before the Court determines whether certification is appropriate and as the Court may otherwise allow.

51. This case is properly brought as a class action under Fed. R. Civ. P. 23(a), (b)(2), (b)(3), and (c)(4), and all requirements therein are met for the reasons set forth herein.

52. The claims of all Class and Subclass members derive directly from a single course of conduct by the Defendant. Defendant have and continue to engage in uniform and standardized conduct toward the Class and Subclass members. Defendant do not differentiate, in degree of care or candor, in their actions or inactions, or the content of their statements or omissions, among individual Class and Subclass members. Accordingly, Plaintiff brings this lawsuit as a class action on Plaintiff's own behalf and on behalf of all other persons similarly situated pursuant under Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of these provisions.

53. Certification of Plaintiff's claims is appropriate because Plaintiff can prove the elements of Plaintiff's claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

54. **Numerosity - Fed. R. Civ. P. 23(a)(1).** The Class and Subclass are so numerous that joinder of all members is impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed the Class and Subclass includes thousands, if not millions, of members. The numerosity requirement is, therefore, satisfied. Undoubtedly, individual joinder in this case is impracticable. More than one thousand Class and Subclass members is sufficient to satisfy numerosity under Fed. R. Civ. P. 23(a)(1).

55. **Ascertainability.** The Class and Subclass are each ascertainable because its members can be readily identified using business records, contracts, and other information kept by Defendant in the usual course of business and within their control or Plaintiff and the Class

COMPLAINT
Case No.:

and Subclass themselves.  Plaintiffs anticipate providing appropriate notice to the Class and Subclass to be approved by the Court after class certification, or pursuant to court order.

56.     **Commonality and Predominance - Fed. R. Civ. P. 23(a)(2) and (b)(3).** There are several questions of law and fact common to the claims of Plaintiff and the members of the Class and Subclass. All of the members of the Class' and Subclass' claims are based upon the same facts and circumstances. Fed. R. Civ. P. 23(a)(3). The questions of law and fact common to the members of the Class and Subclass predominate over any questions affecting only individual members of the Class and Subclass. The resolution of common questions in this case will resolve the claims of both Plaintiff and the Class and Subclass. Common questions include, but are not limited to, the following:

a.     Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly misrepresented the amount of storage capacity on the USB Flash Drives it sells in an amount that was materially more than it actually contained;

b.     Whether Defendant unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly induced Plaintiff and the Members of the Class and Subclass into purchasing the USB Flash Drives based on omissions, misrepresentations, and/or false promises regarding the memory capacity of the USB Flash Drives it sells;

c.     Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that the USB Flash Drive is approximately contains 6.7% less storage capacity than the actual storage capacity;

d.     Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that the GBs represented is not the same as what a computer processing system would read the device as having and that the available

COMPLAINT
Case No.:

storage is actually approximately 6.7% less;

e. Whether Defendant engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by failing to take the steps to adequately disclose the actual storage capacity of the USB Flash Drive compared to the amount advertised on its packaging and other sales literature;

f. Whether Defendant's marketing, sales, and/or other business practices are unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

g. Whether Defendant breached one or more terms of the contract or agreement;

h. Whether GB is unambiguously the common usage of the term (1024 megabytes);

i. Whether there is an ambiguity in the terms of the contract or agreement;

j. Whether Defendant adequately, meaningfully, conspicuously disclosed to Plaintiff and the Class and Subclass that the storage capacity is 6.7% less than what a member of the Class would understand, believe or think;

k. Whether Defendant had a duty to disclose that the storage capacity is approximately 6.7% less than the amount of GBs identified on the front of the package;

l. Whether Plaintiff and the Class and Subclass are entitled to compensatory, actual, and/or statutory damages as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent conduct;

m. Whether Defendant violated the applicable consumer protection statutes;

n. Whether Defendant concealed material facts in its advertising materials and agreement and/or failed to adequately disclose to Plaintiff material facts;

o. Whether Defendant has engaged in deceptive acts or practices in connection with the sales, marketing, and/or manufacturing of the USB Flash Drives;

p. Whether Defendant breached one or more agreements with Plaintiff and the Class

14

and Subclass Members;

q.      Whether Defendant was unjustly enriched;

r.      Whether Defendant's agreement is unconscionable and/or contain unconscionable provisions;

s.      Whether Plaintiff and the Class and Subclass are entitled to actual, compensatory, nominal, statutory, and/or punitive damages;

t.      Whether the relationships between Defendant on one hand and the Plaintiff and the Class and Subclass on the other is governed by California law;

u.      Whether Defendant violated California law; and/or

v.      Whether Plaintiff and the Class and Subclass are entitled to injunctive, declaratory relief, or other equitable relief.

2.      **Typicality - Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of the Class and Subclass.  The claims of the Plaintiff and the respective Class and Subclass are based on the same legal theories and arise from the same unlawful and willful conduct of Defendant, resulting in the same injury to the Plaintiff and the respective Class and Subclass. Plaintiff and all members of the Class and Subclass are similarly affected by Defendant's wrongful conduct and were damaged in the same way. Plaintiff's interests coincide with, and are not antagonistic to, those of the other Class and Subclass members.  Plaintiff has been damaged by the same wrongdoing set forth in this Complaint.

57.      **Adequacy - Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate Class and Subclass representative because Plaintiff has retained counsel competent and experienced in complex class action litigation; neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class and Subclass;  Plaintiff is knowledgeable about the subject matter of this action and will assist counsel to vigorously prosecute this litigation and has or can acquire

COMPLAINT
Case No.:

adequate financial resources to assure that the interests of the Class and Subclass will not be harmed.   The interests of the members of Class and Subclass will be fairly and adequately protected by Plaintiff and Plaintiff's counsel.  As such, Plaintiff meets the adequacy requirement.

58.   **Superiority - Fed. R. Civ. P. 23(b)(3).** The class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each member of the Class, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if members of the Class and Subclass themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

59.   **Policies Generally Applicable to the Class and Subclass. Fed. R. Civ. P. 23(b)(2)**. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and Subclass, and making final injunctive relief appropriate with respect to the Class and Subclass as a whole. Defendant's practices challenged herein apply to and affect the members of the Class and Subclass uniformly, and Plaintiff's challenge of those practices hinge on Defendant's conduct with respect to the Class and Subclass as a whole, not on facts or law applicable only to Plaintiff.

60.   **Injunctive and Declaratory Relief is Appropriate - Fed. R. Civ. P. 23(b)(1).** Defendant has acted, or refused to act on, grounds generally applicable to the Class, thereby

COMPLAINT
Case No.:

making appropriate final and injunctive relief with respect to the members of the Class and Subclass as a whole.

61.     The prosecution of separate actions by the individual members of the Class and Subclass would create a risk of inconsistent or varying adjudication with respect to individual members of the Class.

62.     The prosecution of separate actions by individual members of the Class and Subclass would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other members of the Class and Subclass not parties to the adjudications, or substantially impair or impede their ability to protect their interests.

63.     **Certification of Particular Issues. Fed. R. Civ. P. 23(c)(4).** Issue certification is also appropriate because the following particular issues (among others) exist that may be brought or maintained as a class action:

a.     Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly misrepresented the amount of storage capacity on the USB Flash Drive;

b.     Whether Defendant unfairly, unethically, unlawfully, falsely, fraudulently, deceptively, misleadingly, unconscionably, and/or confusingly induced Plaintiff and the Members of the Class and Subclass into purchasing the USB Flash Drive based on omissions, misrepresentations, and/or false promises;

c.     Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that the USB Flash Drive is approximately contains 6.7% less storage capacity than the actual storage capacity;

d.     Whether Defendant unfairly, unethically, unlawfully, falsely, deceptively, misleadingly, unconscionably, and/or confusingly omitted that the GBs represented is not the

COMPLAINT
Case No.:

same as what a computer processing system would read the device as having and that the available storage is actually approximately 6.7% less;

e.      Whether Defendant engaged in unfair, unlawful, fraudulent, unethical, unconscionable, and/or deceptive trade practices by failing to take the steps to adequately disclose the storage capacity of the USB Flash Drive;

f.      Whether Defendant's marketing, sales, and/or other business practices are unfair, deceptive, unlawful, fraudulent, unconscionable, and/or unethical;

g.      Whether Defendant breached one or more terms of the contract or agreement;

h.      Whether GB is unambiguously the common usage of the term (1024 megabytes);

i.      Whether there is an ambiguity in the terms of the contract or agreement;

j.      Whether Defendant adequately, meaningfully, conspicuously disclosed to Plaintiff and the Class and Subclass that the storage capacity is 6.7% less than what you think;

k.      Whether Defendant had a duty to disclose that the storage capacity is approximately 6.7% less than the amount of GBs identified on the front of the package;

l.      Whether Plaintiff and the Class and Subclass are entitled to compensatory, actual, and/or statutory damages as a result of Defendant's unfair, unlawful, unethical, deceptive, unconscionable, and/or fraudulent conduct;

m.      Whether Defendant violated the applicable consumer protection statutes;

n.      Whether Defendant concealed material facts in its advertising materials and agreement and/or failed to adequately disclose to Plaintiff material facts;

o.      Whether Defendant has engaged in deceptive acts or practices in connection with the sales, marketing, and/or manufacturing of the USB Flash Drives;

p.      Whether Defendant breached one or more agreements with Plaintiff and the Class and Subclass Members;

18

q.      Whether Defendant was unjustly enriched;

r.      Whether Defendant's agreement is unconscionable and/or contain unconscionable provisions;

s.      Whether the relationships between Defendant on one hand and the Plaintiff and the Class and Subclass on the other is governed by California law; and/or

t.      Whether Defendant violated California law.

## VII.   CAUSES OF ACTION

**COUNT I**
**BREACH OF CONTRACT /**
**(On Behalf of Plaintiff and the Class and Subclass)**

64.     Plaintiff realleges and reincorporates by reference the allegations contained within the foregoing allegations of this Class Action Complaint as if fully set forth herein.

65.     Plaintiff purchased a USB Flash Drive manufactured, marketed, and sold by SanDisk with a stated storage capacity of 64 GBs. Specifically, Plaintiff purchased a SanDisk 64 GB iXPAND Flash Drive USB 3.0.

66.     In connection with this sale, Defendant purported to create a contractual relationship with Plaintiff, as evidenced by certain written contractual language Defendant includes in and on its packaging contemporaneous with Plaintiff taking ownership of the product.

67.     Specifically, in connection with this purchase, Defendant promised to provide a USB Flash Drive with a storage capacity of 64 GBs in exchange for the purchase price.

68.     Plaintiff paid the purchase price for the SanDisk 64 GB iXPAND Flash Drive USB 3.0.

69.     Defendant breached the essential terms of its promise by tendering a USB Flash

19

Drive to Plaintiff with a storage capacity that was less than 64 GBs.

70.     Plaintiff and members of the Class and Subclass have sustained damages as a direct and proximate result of Defendant's breach of the agreement.

71.     Defendant is liable for the losses of Plaintiff and the Class and Subclass that have resulted from Defendant's breaches of the parties' contractual agreements.

**COUNT II**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**(California Business & Professions Code §§ 17200, *et seq.*)**
**(On Behalf of Plaintiff and the Class and Subclass)**

72.     Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

73.     California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, defines unfair business competition to include any "unfair," "unlawful," or "fraudulent" business act or practice. The Act also provides for injunctive relief, restitution, and disgorgement of profits for violations.

74.     Defendant's unlawful, unfair, and/or fraudulent business acts and practices, as described herein, were and are in violation of the UCL. Defendant's conduct violates the UCL in the following ways:

a.     By knowingly and intentionally concealing from Plaintiff and the other members of the Class and Subclass material information concerning the USB Flash Drives as set forth above;

b.     By violating the FTC;

c.     By breaching the terms of the Contract or other agreement;

d.     By violating other California laws, including Cal. Bus. & Prof. Code § 17500, *et seq.*, and Cal. Corp. Code § 25000, *et seq.* (described below); and/or

COMPLAINT
Case No.:

e.      Violating other statutory law.

75.      Defendant's omissions alleged herein caused Plaintiff and the other Class and Subclass members to purchase the USB Flash Drive.  Had they been aware of the information omitted by Defendant, Plaintiff and the other Class and Subclass members would not have purchased the USB Flash Drive or would have purchased it only at a reduced price.

76.      Defendant's practice is also immoral, unethical, oppressive, or unscrupulous and causes injury to consumers which outweigh its benefits.

77.      Accordingly, Plaintiff and the Class and Subclass members have suffered injury in fact, including lost money as a result of Defendant's unlawful, unfair, and fraudulent business acts and/or practices.

78.      Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendant, under Cal. Bus. & Prof. Code § 17200.

79.      Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the Class and Subclass members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Civ. Code § 3345; and for such other relief set forth below.

**COUNT III**
**VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT,**
**CALIFORNIA CIVIL CODE § 1750, ET SEQ.**
**(On Behalf of Plaintiff and the Class and Subclass)**

80.      Plaintiff hereby incorporates all paragraphs of Plaintiff's Class Action Complaint against Defendant as if fully set forth herein.

81.      This cause of action is brought pursuant to Civil Code § 1750, *et seq*., the Consumers Legal Remedies Act ("CLRA"), on behalf of a Class and Subclass as defined herein.

21

COMPLAINT
Case No.:

82.     Defendant is a "person" within the meaning of Cal. Civ. Code sections 1761(c) and 1770.

83.     Plaintiff and members of the proposed Subclass are "consumers" within the meaning of Cal Civ. Code §§ 1761(d) and 1770.

84.     Defendant's USB Flash Drive products are "goods" or "services" as defined by Cal. Civ. Code § 1761(a).

85.     As described above, Defendant violated the CLRA in at least the following respects:

(a)   in violation of § 1770(a)(5), by representing that its "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have";

(b)   in violation of § 1770(a)(6), by representing that Defendant's "goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another";

(c)   in violation of § 1770(a)(9), by "advertising goods or services with intent not to sell them as advertised";

(d)   in violation of § 1770(a)(14), by "representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve";

(e)   in violation of § 1770(a)(16), by "representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not";

(f)   in violation of § 1770(a)(19), "by inserting an unconscionable provision in the contract"; and

(g)   for other such violations of the CLRA that discovery will uncover.

86.     Defendant's actions as described herein were done with conscious disregard of

COMPLAINT
Case No.:

Plaintiff's rights and Defendant was wanton and malicious in Defendant's concealment of the same.

87.     Plaintiff and the Subclass have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions in the marketing and advertisement of the USB Flash Drives.

88.     Defendant's unfair or unlawful acts, practices, representations, omissions, and/or courses of conduct, as described herein, were undertaken by Defendant in a transaction intended to result in, and which did result in, the sale or lease of goods or services to consumers.

89.     As a direct and proximate result of Defendant's violations of law, Plaintiff has been injured.

90.     On September 4, 2018, Plaintiff sent Defendant a CLRA notification and demand letter via certified mail, return receipt requested.  See Exhibit A, Proof of Mailing CLRA Letter by way of certified mail, return receipt requested.

91.     The notice letter will set forth the relevant facts and notifies each Defendant of its CLRA violations, and request that each Defendant promptly remedy those violations.

92.     Under the CLRA, a plaintiff may, without prior notification, file a complaint alleging violations of the CLRA that seeks injunctive relief ***only***. Then, if the Defendant does not remedy the CLRA violations within 30 days of notification, the Plaintiff may amend her or his CLRA causes of action without leave of court to add claims for damages.

93.     At this time, Plaintiff expressly disclaims any and all damages under CLRA. Plaintiff, individually and on behalf of the class, will amend this complaint to add damages claims if Defendants do not remedy their violations as to Plaintiff and the Class Members within the statutory period.

94.     Under the CLRA, Plaintiff is entitled to a permanent injunction prohibiting

COMPLAINT
Case No.:

practices that violate the CLRA.

95.     Defendant's practices, acts and courses of conduct in connection with the sale of its USB Flash Drive products, as described above, are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. As a result of Defendant's acts and practices as alleged in this Complaint, Plaintiff and the Subclass are entitled to injunctive relief prohibiting Defendant from continuing in the future the unlawful, unfair, or fraudulent practice as described herein.

96.     Plaintiff and the Subclass reasonably believed and/or depended on the material false and/or misleading information provided by, or omitted by, Defendant with respect to Defendant's unfair acts and deceptive practices

97.     By reason of the foregoing, Defendant's unlawful methods, acts, or practices as described herein have caused damage to Plaintiff and the Subclass Members, entitling them to injunctive relief.

98.     Pursuant to Cal. Civ. Code § 1782(a)(2), Plaintiff demands judgment against Defendants under the CLRA for injunctive and equitable relief *only* to enjoin the practices described herein.

99.     Plaintiff, individually and as a member of the Class, has no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above.

100.     Pursuant to § 1780(d) of the CLRA, attached hereto as Exhibit B is the affidavit showing that this action has been commenced in the proper forum.

101.     In bringing this action, Plaintiff has engaged the services of attorneys and has incurred reasonable legal expenses in an amount to be proved at trial.

102.     Plaintiff is also entitled to recover their attorneys' fees, costs, and expenses.

**COUNT IV**

24

**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**(California Business & Professions Code §§ 17500, *et seq.*)**
**(On Behalf of Plaintiff and the Subclass)**

103.    Plaintiff realleges and incorporates by reference all preceding allegations as though fully set forth herein.

104.    Cal. Bus. & Prof. Code § 17500 provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise,. . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

105.    Defendant caused to be made or disseminated throughout the United States, through advertising, marketing and other publications, statements, including statements included in its general advertising and on its website that omitted material information from consumers and members of the Subclass.

106.    Defendant knew or should have known through the exercise of reasonable care that the omitted information was material to consumers, including Plaintiff and the other Subclass members.

107.    Defendant has violated Cal. Bus. & Prof. Code § 17500 because their omissions regarding the USB Flash Drives were material and likely to deceive a reasonable consumer.

108.    Plaintiff and the other Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Defendant's unfair, unlawful, and/or deceptive practices. By purchasing the USB Flash Drives, Plaintiff and the other Subclass members relied on the representations by Defendant from which Defendant omitted material information.  Had

COMPLAINT
Case No.:

Plaintiff and the other Subclass members been aware of the omitted information, they would not have purchased the USB Flash Drives or would have only paid less for it. Plaintiff and other Subclass members bestowed a benefit upon Defendant but did not receive the benefit of their bargain.

109.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, in the state of California and elsewhere.

110.    Plaintiff, individually and on behalf of the other Subclass members, requests that this Court enter such orders or judgments as may be necessary to enjoin Defendant from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Subclass members any money Defendant acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## VIII.        PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class and Subclass pray for judgment as follows:

A.      For an order certifying the proposed class, appointing Plaintiff and Plaintiff's counsel to represent the proposed class, appointing counsel for Plaintiff as lead counsel for the respective class;

B.      An order awarding declaratory relief and temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and/or unfair business practices alleged in this Complaint;

C.      Appropriate injunctive relief;

D.      Expressly disclaiming any and all damages under Civil Code § 1750, *et seq*., "the CLRA", for an order awarding restitution, disgorgement, actual damages, statutory damages, exemplary damages, treble damages, and punitive damages under applicable law, and

COMPLAINT
Case No.:

compensatory damages for economic loss, diminished value, and out-of-pocket costs in an amount to be determined at trial;

E.      A declaration that Defendant is financially responsible for all Class and Subclass notice and the administration of Class and Subclass relief;

F.      An order awarding any applicable statutory and civil penalties;

G.      An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

H.      An award of costs, expenses, and attorneys' fees as permitted by law; and

I.      Such other or further relief as the Court may deem appropriate, just, and proper under the circumstances.

## IX.    DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial for all claims so triable.

DATED: September 4, 2018      LAW OFFICE OF FRANCIS J. FLYNN, JR.

 /s/ Francis J. Flynn, Jr.
Francis J. Flynn, Jr.
422 South Curson Avenue
Los Angeles, California 90036-3169
T: 314-662-2836
F: 1-855-710-7706
E: casey@lawofficeflynn.com

James Rosemergy (to seek admission pro hac vice)
Paul Maddock (to seek admission pro hac vice)
CAREY, DANIS & LOWE
8235 Forsyth Boulevard
Saint Louis, Missouri 63105-1643
Tele: 314-725-7700
Email: jrosemergy@careydanis.com
Email: pmaddock@careydanis.com

**ATTORNEYS   FOR   PLAINTIFF   AND   THE PROPOSED CLASS**

COMPLAINT
Case No.: