KEITH E. EGGLETON, State Bar No. 159842
ANTHONY J WEIBELL, State Bar No. 238850
AMIT Q. GRESSEL, State Bar No. 307663
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
E-mail: keggleton@wsgr.com
aweibell@wsgr.com
agressel@wsgr.com

Attorneys for Defendant
SANDISK LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JOHN DINAN,<br><br>    Plaintiff,<br><br>    v.<br><br>SANDISK LLC,<br><br>    Defendant. | Case No. 5:18-cv-05420-BLF<br><br>**SANDISK LLC'S MOTION TO DISMISS THE COMPLAINT**<br><br>Date:      April 25, 2019<br>Time:      9:00 AM<br>Judge:     Hon. Beth Labson Freeman<br>Courtroom: 3, 5th Floor |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION ...................................................................................iv

STATEMENT OF THE ISSUES.............................................................................................iv

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................1

INTRODUCTION......................................................................................................................1

STATEMENT OF FACTS AND ALLEGATIONS ..................................................................1

      A.     The Parties and the Product at Issue........................................................................1

      B.     The Base-10 Definition of "GB" is the Government-Approved Standard...............2

      C.     The Base-10 Definition of "GB" is the Industry Standard.......................................2

      D.     Plaintiff's "Base-2" Definition is Disapproved by Government and Industry........3

      E.     Plaintiff's Cited Dictionaries Include the Base-10 Definition of GB .....................4

      F.     Plaintiff's Claims........................................................................................................5

ARGUMENT ..............................................................................................................................5

I.    LEGAL STANDARD AND REQUEST FOR JUDICIAL NOTICE ................................5

II.   SANDISK'S PRODUCT LABELING PRECLUDES PLAINTIFF'S CLAIMS...............7

III.  SANDISK'S USE OF AN INDUSTRY STANDARD IS NOT ACTIONABLE ............10

IV.  SANDISK'S USE OF A GOVERNMENT STANDARD IS NOT ACTIONABLE .......11

CONCLUSION .........................................................................................................................13

# TABLE OF AUTHORITIES

Page

## CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 5, 6

*Becerra v. Coca-Cola Co.*,
    No. 17-05916-WHA, 2018 U.S. Dist. LEXIS 31870
    (N.D. Cal. Feb. 27, 2018) ....................................................................................... 10

*Becerra v. Dr Pepper/Seven Up, Inc.*,
    No. 17-05921-WHO, 2018 U.S. Dist. LEXIS 142074
    (N.D. Cal. Aug. 21, 2018) ...................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ............................................................................................. 5, 6

*Bobo v. Optimum Nutrition, Inc.*,
    No. 14-2408, 2015 U.S. Dist. LEXIS 187233
    (S.D. Cal. Sept. 11, 2015) ........................................................................................ 9

*Bush v. Mondelez Int'l, Inc.*,
    No. 16-02460-RS, 2016 U.S. Dist. LEXIS 174391
    (N.D. Cal. Dec. 16, 2016) .................................................................................. 8, 10

*Castagnola v. Hewlett-Packard Co.*,
    No. 11-05772-JSW, 2012 U.S. Dist. LEXIS 82026
    (N.D. Cal. June 13, 2012) ........................................................................................ 9

*Daniels-Hall v. Nat'l Educ. Ass'n*,
    629 F.3d 992 (9th Cir. 2010) ................................................................................ 6, 7

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) ................................................................. 1, 8, 10, 13

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ................................................................................... 6

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ..................................................................................... 9

*Garcia v. Sony Comput. Entm't Am., LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................................................................. 9

*Gonzales v. Peter Thomas Roth Labs, LLC*,
    No. 17-01393, 2017 U.S. Dist. LEXIS 197060
    (C.D. Cal. Nov. 17, 2017) ...................................................................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................................ 6, 7

*Lopez v. Nissan N. Am., Inc.*,
    201 Cal. App. 4th 572 (2011) .................................................................... 11, 12, 13

*McKinnis v. Kellogg USA*,
  No. 07-2611, 2007 U.S. Dist. LEXIS 96106
  (C.D. Cal. Sept. 19, 2007) ..........................................................................................10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ........................................................................................6

*Suzuki v. Hitachi Glob. Storage Techs., Inc.*,
  No. 06-07289-MHP, 2007 U.S. Dist. LEXIS 51605
  (N.D. Cal. July 17, 2007) ..............................................................................11, 12, 13

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ........................................................................................6

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
  592 F.3d 954 (9th Cir. 2010) ........................................................................................6

**STATUTES**

15 U.S.C. § 205b ..........................................................................................................2

15 U.S.C. § 205c ..........................................................................................................2

Cal. Bus. & Prof. Code § 12301 ..................................................................................11

Cal. Bus. & Prof. Code § 12313 ..................................................................................11

**REGULATIONS**

*Metric System of Measurement: Interpretation of the International System of Units
  for the United States*, 63 Fed. Reg. 40334 (July 28, 1998) ..................................2, 4

**RULES**

Fed. R. Civ. P. 12(b)(6) ............................................................................................5, 6

Fed. R. Evid. 201(b) ....................................................................................................6

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on April 25, 2019 at 9:00 AM, before the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, San Jose Courthouse, Courtroom 3, 5th Floor, 280 South 1st Street, San Jose, CA 95113, Defendant SanDisk LLC ("SanDisk") will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) for an order dismissing the claims against SanDisk asserted by Plaintiff John Dinan in this action ("Plaintiff") in the Complaint ("Complaint" or "Compl.") with prejudice for failure and inability to state a claim.

The motion is based upon this Notice of Motion; the Memorandum of Points and Authorities in support thereof; the Request for Judicial Notice contained therein; the Declaration of Anthony Weibell in support thereof that is filed herewith ("Weibell Decl."); the Proposed Order filed herewith; the pleadings, records, and papers on file in this action; oral argument of counsel; and any other matters properly before the Court.

**STATEMENT OF THE ISSUES**

Should the claims against SanDisk be dismissed with prejudice under Fed. R. Civ. P. 12(b)(6) because Plaintiff has failed to and cannot state a claim?

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

This putative consumer class action is based on one core allegation—that consumers might be misled by the term "GB" (gigabyte) on the packaging for SanDisk's USB flash drives to believe that these products have more than one billion (1,000,000,000) bytes of memory per GB, even though the packaging states that "1GB = 1,000,000,000 bytes." This product labeling claim must fail because the facts do not demonstrate "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016) (affirming dismissal with prejudice of all label-based claims where plaintiff could not allege "facts to state a plausible claim that the [product] label is false, deceptive, or misleading").

Plaintiff's Complaint does not, and cannot, meet this standard. The term "GB" is not in and of itself misleading because it gives no indication or suggestion that it means more than one billion bytes as Plaintiff alleges. But in any event, the definition of "GB" used by SanDisk is called out by an asterisk next to the GB symbol and printed right on the package: "1GB = 1,000,000,000 bytes." Moreover, this definition is not unique to SanDisk, it is the industry standard for manufacturers of electronic storage devices and is prescribed by the U.S. Department of Commerce and the relevant international standards-setting organizations for the electronic storage industry. As such, it is incorporated by law as the legal definition of "gigabyte" for all commercial transactions in this state. In addition, as shown by asking a smart phone "*How many bytes are in a gigabyte*?," this definition is essentially ubiquitous in the market.

SanDisk therefore respectfully requests that this action be dismissed with prejudice.

**STATEMENT OF FACTS AND ALLEGATIONS**

**A.   The Parties and the Product at Issue**

SanDisk makes and sells electronic storage devices such as USB flash drives, removable memory cards, and solid state drives. Compl. ¶ 4. Plaintiff is a resident of Los Angeles, California who allegedly purchased a "SanDisk 64 GB iXPAND Flash Drive USB 3.0." Compl. ¶ 3. This USB flash drive product was designed and sold for use with an iPhone or iPad, and its

packaging and marketing materials include a "Made for iPhone | iPad" badge. Weibell Decl. Ex. 1.[1] The package for this product also includes an asterisk next to the large "GB" symbol (an abbreviation for "gigabyte") on the front of the package that directs consumers to the precise definition of this symbol on the rear of the package: "1GB = 1,000,000,000 bytes." Weibell Decl. Ex. 1. This definition is referred to as a "decimal" or "base-10" definition because it defines gigabyte as a power of 10, or specifically, $10^9$.

### B. The Base-10 Definition of "GB" is the Government-Approved Standard

Contrary to Plaintiff's allegations, SanDisk's definition of "GB" as one billion bytes is not arbitrary. It is the standard set by the U.S. Government. Congress declared the International System of Units (SI) to be "the preferred system of weights and measures for United States trade and commerce" and authorized the Department of Commerce to interpret these standards. 15 U.S.C. §§ 205b-205c. More than twenty years ago, the Department of Commerce's National Institute of Standards and Technology ("NIST") instructed that with respect to units for electronic data, "the SI prefixes [k, M, G] strictly represent powers of 10." *Metric System of Measurement: Interpretation of the International System of Units for the United States*, 63 Fed. Reg. 40334, 40338 (July 28, 1998) (emphasis added), submitted herewith as Weibell Decl. Ex. 2. The NIST further clarified, "one kilobit represents 1000 bits." Weibell Decl. Ex. 3. The federal agency responsible for setting the relevant standards in trade and commerce has thus approved and prescribed the "1GB = 1,000,000,000 bytes" definition used by SanDisk.

### C. The Base-10 Definition of "GB" is the Industry Standard

In addition to being a government-approved standard, the "decimal" or "base-10" definition of "GB" is the industry standard for electronic storage products and is used by all manufacturers of electronic storage devices. As explained by Apple, the maker of the iPhone and iPad devices for which Plaintiff presumably purchased the SanDisk iXpand Flash Drive:

---

[1] As explained below (Section I), the Court may consider the statements made on the packaging of the product purchased by Plaintiff because the packaging is referenced in and relied on by the Complaint. Compl. ¶ 28. Section I also contains a request for judicial notice of other materials that may be considered with this motion that are referenced herein.

> Manufacturers of storage devices measure storage capacity using the decimal system (base 10). That's why the product packaging and online specifications include a statement such as this: 1GB = 1 billion bytes, and 1TB = 1 trillion bytes; actual formatted capacity less.

Weibell Decl. Ex. 5.

This industry standard is not new. In 1998, the International Electrotechnical Commission (IEC), the leading international organization for worldwide standardization in electrotechnology, formalized the standard for a "gigabyte." The IEC declared that "one gigabyte" would be equal to one billion bytes and represented by the symbol "1 GB"—exactly how SanDisk uses this symbol. Weibell Decl. Ex. 4. This system aligned the measurement of bytes with other units of measurement in the International System of Units (SI) in which the prefixes k, M, and G represented the base-10 multiples $10^3$, $10^6$, and $10^9$ respectively, such as in one kilowatt (kW) is equal to one thousand watts, one megawatt (MW) is equal to one million watts, and one gigawatt (GW) is equal to one billion watts. *Id.*

This standard was adopted with the support of the International Committee for Weights and Measures (CIPM) and the Institute of Electrical and Electronics Engineers (IEEE), the world's largest technical professional organization. *Id.* IEEE had already previously determined "that IEEE standards will use the conventional, internationally adopted, definitions of the SI prefixes. Mega will mean 1 000 000." *Id.*

### D.   Plaintiff's "Base-2" Definition is Disapproved by Government and Industry

In his Complaint, Plaintiff refers to another method for measuring bytes called the binary (or base-2) system where bytes are measured in powers of 2 (*e.g.*, $2^{10}$, $2^{20}$, $2^{30}$). Compl. ¶ 31. Because SI prefixes such as giga- (G-) are based on the decimal (base-10) system, the IEC has disapproved of using these standard prefixes for base-2 systems and assigned different terminology for bytes measured in base-2. For example, instead of $2^{30}$ or 1,073,741,824 bytes being referred to as one gigabyte (GB), it should be referred to as one "*gibibyte*" (or "1 GiB"). Weibell Decl. Ex. 4. As alleged by Plaintiff, some computer operating systems violate this standard by using SI-based symbols to report bytes in a base-2 system (*e.g.*, using "1 GB" to refer to $2^{30}$ or 1,073,741,824 bytes). Compl. ¶¶ 18-19. Plaintiff concedes, however, that many

computer operating systems, such as all Apple operating systems released in the past nine years, do not measure bytes using the base-2 binary system. Compl. ¶ 18. Instead, Apple operating systems, as well as those for iPhones and iPads, "report[] storage capacity using the decimal system (base 10), which calculates 1GB as 1 billion bytes." Weibell Decl. Ex. 5.

To ensure proper use of terms like "gigabyte" and "GB," the U.S. Government's NIST—contrary to the premise of Plaintiff's Complaint—also disapproves of any use of SI-based symbols (*e.g.*, kB, MB, and GB) to measure bytes under the base-2 system alleged by Plaintiff: "it is *inappropriate* to use them to represent powers of 2," 63 Fed. Reg. at 40338 (emphasis added), and thus it is "unacceptable to use kilo (k) to represent $2^{10}$ = 1024, mega (M) to represent $2^{20}$ = 1 048 576, or giga (G) to represent $2^{30}$ = 1 073 741 824," Weibell Decl. Ex. 3. In short, the U.S. Government has declared that "one kilobit represents 1000 bits and not 1024 bits." *Id.*

### E. Plaintiff's Cited Dictionaries Include the Base-10 Definition of GB

In attempting to support his claim that the base-10 definition for gigabyte is "arbitrary," Plaintiff's Complaint purports to quote from the definition of this term found in three separate dictionaries. Compl. ¶¶ 12-15 (purporting to quote the Oxford Dictionary, Merriam-Webster Dictionary, and Dictionary.com). But for two of these dictionaries, Plaintiff selectively omits the complete set of alternative definitions that match the base-10 definition used by SanDisk; and for the third dictionary, the portion quoted by Plaintiff actually states—consistent with SanDisk's definition—that a gigabyte is one billion (one thousand million) bytes:

| | |
|---|---|
| Oxford Dictionary: | Definition of gigabyte in English: A unit of information **equal to one thousand million ($10^9$)** or, strictly, $2^{30}$ bytes. |
| Merriam-Webster: | Definition of gigabyte: 1024 megabytes or 1,073,741,824 bytes; also: **one billion bytes** |
| Dictionary.com: | gigabyte [citing definition snippets from other dictionaries]:<br>1. a measure of storage capacity equal to $2^{30}$ (1024) bytes.<br>1. computing one thousand and twenty-four megabytes<br>1. A unit of computer memory or data storage capacity equal to 1,024 megabytes ($2^{30}$ bytes).<br>2. **One billion bytes**. |

Weibell Decl. Exs. 6-8 (emphasis added to show portions omitted from or ignored by the Complaint).

Modern consumers of course need not pull out their dictionaries to define this term: any consumer who asks their Apple or Android smart phone "*How many bytes are in one gigabyte?*" will be told "*One billion (1,000,000,000) bytes*" (Android) or "*1 gigabyte converts to about 1 billion bytes*" (Apple iPhone), exactly consistent with the base-10 definition used by SanDisk.

### F. Plaintiff's Claims

Notwithstanding the foregoing facts, Plaintiff nevertheless alleges that he got less storage space than what he expected when he purchased his SanDisk product because he claims to have thought the symbol "GB" on the package meant 1,073,741,824 bytes (a base-2 definition) instead of the "1 GB = 1,000,000,000 bytes" definition stated right on on the package.[2] Compl. ¶¶ 12-20. Based on this allegation, Plaintiff asserts claims on behalf of himself and a putative class of similarly-situated consumers for (1) breach of contract ("contract claim"); (2) unfair competition under California Business & Professions Code § 17200 ("UCL claim"); (3) violation of the Consumer Legal Remedies Act in California Civil Code § 1750 ("CLRA claim"); and (4) false advertising under California Business & Professions Code § 17500 ("FAL claim").

As Plaintiff's Complaint concedes, each of these claims, and the entire case, "stems" from the allegation that SanDisk's use of the GB symbol along with the base-10 definition for gigabyte is "misrepresenting the storage capacity" of its USB flash drive products. Compl. ¶ 12. Because this core allegation is not plausible and because Plaintiff cannot state a claim without it, SanDisk moves to dismiss the Complaint with prejudice.

## ARGUMENT

### I. LEGAL STANDARD AND REQUEST FOR JUDICIAL NOTICE

A complaint should be dismissed under Rule 12(b)(6) when it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "Factual allegations must

---

[2] Plaintiff is not in fact consistent in alleging the number of bytes he expected to find in a gigabyte, as he twice alleges elsewhere in his Complaint that "a GB is 1.024 billion bytes" (rather than 1.073 billion bytes). Compl. ¶¶ 28-29.

be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, while the Court accepts as true all material allegations in the complaint, it need not accept the truth of conclusory allegations or unwarranted inferences, nor should it accept legal conclusions as true merely because they are cast in the form of factual allegations. *Id.* at 678-79; *accord Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").

Nor should the Court accept as true allegations that are contradicted by documents on which the plaintiff's claims are based. As the Ninth Circuit has explained, "in order to prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based, a court may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007). This rule also "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).

Similarly, the Court should not "accept as true allegations that contradict matters properly subject to judicial notice" under Rule 201 of the Federal Rules of Evidence. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *accord Khoja*, 899 F.3d at 999. "Judicial notice under Rule 201 permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.' A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Khoja*, 899 F.3d at 999 (quoting Fed. R. Evid. 201(b)(1)-(2)). Documents typically subject to judicial notice include "governmental documents," *id.* at 1001, the content of publicly-accessible websites, *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010), as well as other publicly-available documents that show what information is "in the public realm," *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010).

In view of the foregoing standards, SanDisk respectfully requests the Court to consider the following documents and information not attached to the Complaint:

1. SanDisk asks the Court to consider the statements and disclosures on the product packaging on which Plaintiff's claims are based and on which he claims to have relied (Compl. ¶¶ 28, 37, 39), submitted herewith as Weibell Decl. Ex. 1; as well as the definitions of "gigabyte" from the three dictionaries cited and relied upon by the Complaint (Compl. ¶¶ 13-15), submitted herewith as Weibell Decl. Exs. 6-8.

2. SanDisk asks the Court to take judicial notice of the contents of the published statements of the U.S. Government in the Federal Register and in other federal government publications, submitted herewith as Weibell Decl. Exs. 2-4, in which the NIST declares that the governmental and industry standard definition for gigabyte is one billion bytes. *Khoja*, 899 F.3d at 1001 ("governmental documents" are typically subject to judicial notice).

3. SanDisk asks the Court to take judicial notice of the contents of the published statement of Apple, Inc. regarding how its devices define "GB," submitted herewith as Weibell Decl. Ex. 5. The existence of this statement is readily verifiable because it is displayed on a public website. *Daniels-Hall*, 629 F.3d at 998 (content of publicly-accessible websites is judicially noticeable).

4. SanDisk asks the Court to take judicial notice of the fact that a consumer asking their Android or iPhone mobile device "*How many bytes are in one gigabyte?*" will be told "*One billion (1,000,000,000) bytes*" (Android) or "*1 gigabyte converts to about 1 billion bytes*" (Apple iPhone). This fact is readily verifiable by the Court and its staff and anyone with a smart phone.

## II. SANDISK'S PRODUCT LABELING PRECLUDES PLAINTIFF'S CLAIMS

Plaintiff cannot plausibly allege that a significant number of consumers acting reasonably under the circumstances would have been misled into thinking they were getting more than a billion bytes for each gigabyte in a SanDisk USB flash drive. Setting aside the fact (discussed in Section III below) that all makers of external storage devices use the base-10 definition used by SanDisk, the symbol "GB" by itself does not give a reasonable consumer any impression that

SanDisk is using Plaintiff's base-2 binary definition over the industry's base-10 definition of gigabyte. And the package further expressly states that "1GB = 1,000,000,000 bytes."

Where, as here, a plaintiff's contract, UCL, CLRA, and FAL claims are each predicated on an alleged misrepresentation on a product package, those claims should be dismissed if the product packaging and labels as a whole would not establish "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016) (affirming dismissal with prejudice of UCL, CLRA, FAL and other consumer claims where "Plaintiff has not alleged, and cannot allege, facts to state a plausible claim that the [product] label is false, deceptive, or misleading").

As explained by the Ninth Circuit, it is not enough to show "a mere possibility" that a label could be misunderstood. *Id.* In *Ebner*, for example, the Ninth Circuit affirmed dismissal at the pleading stage of a consumer claim alleging a deceptive label that failed to disclose that 25% of the stated weight of the lip balm product was not actually accessible to the consumer. *Id.* The court held that the claim "that the reasonable consumer would be deceived as to the amount of lip product in [the tube] is not plausible" because the "label discloses the correct weight of included lip product" and "[d]ispenser tubes that use a screw mechanism to push up a solid bullet of lip product are commonplace in the market." *Id.* The Ninth Circuit further held that dismissal with prejudice was proper because it was futile to allow amendment where no amendment could change what was disclosed on the product label or consumer experience. *See id.* at 968.

Similarly, a court in this District dismissed consumer deception claims alleging that the size and appearance of a package misled consumers into believing there were more cookies inside the snack package than there actually were. *Bush v. Mondelez Int'l, Inc.*, No. 16-02460-RS, 2016 U.S. Dist. LEXIS 174391, at *4-5 (N.D. Cal. Dec. 16, 2016). The court in *Bush* reasoned that if a reasonable consumer examined the labels on the packaging they would see both the serving size for the particular snack and the number of servings per package, such that the consumer could calculate the approximate number of cookies in the package. *Id.*

There are also numerous cases in which the Ninth Circuit and its district courts have dismissed claims where explanatory notes called out by an asterisk or footnote or accompanying fine print would have been reviewed by a reasonable consumer. *See, e.g.*, *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (rejecting consumer deception claims where promotional offer advertised promotion in large print with qualifying language in small print that would have been read by a reasonable consumer); *Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012) (statements on package about product compatibility accompanied by an asterisk directing consumers to a separate document were "only partial statements, and do not rise to the level of affirmative misrepresentations" without examining the document referred to); *Bobo v. Optimum Nutrition, Inc.*, No. 14-2408, 2015 U.S. Dist. LEXIS 187233, at *9 (S.D. Cal. Sept. 11, 2015) ("A plaintiff cannot pursue a claim based on a statement that can only be misleading when the information surrounding it is ignored."); *Castagnola v. Hewlett-Packard Co.*, No. 11-05772-JSW, 2012 U.S. Dist. LEXIS 82026, at *28 (N.D. Cal. June 13, 2012) (dismissing claims where "offer details" stated that plaintiffs would be charged activation and monthly fees).

Here, as in the cases discussed above, Plaintiff cannot allege facts showing "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled" because there is nothing misleading about the SanDisk product packaging's use of the symbol "GB" when referring to the base-10 definition of gigabyte. By itself, the symbol "GB" does not indicate or suggest that it refers to 1,073,741,824 bytes per gigabyte instead of 1 billion bytes per gigabyte. Moreover, SanDisk clearly marked the GB symbol on its product packaging with an asterisk directing consumers to the statement on the package that "1GB = 1,000,000,000 bytes." If the precise number of bytes was a material consideration for a consumer's purchase, such a consumer "acting reasonably in the circumstances" would have found that information in the express definition of GB on the package.

Because Plaintiff cannot prove "a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be

misled," each of his claims should be dismissed with prejudice. *Ebner*, 838 F.3d at 966 (affirming dismissal with prejudice of all label-based claims).

### III.   SANDISK'S USE OF AN INDUSTRY STANDARD IS NOT ACTIONABLE

The fact that the "GB" symbol on SanDisk's packaging does not itself contain a material misrepresentation, and the additional fact that the express definition is printed right on the package, are, as explained above, fatal to all of Plaintiff's claims. However, even without an express definition of GB on the package, SanDisk's use of the "1 GB = 1,000,000,000 bytes" definition cannot be actionable as a matter of law because that definition is ubiquitous in the electronic storage device marketplace and is the industry standard. Indeed, if most consumer smart phones are telling consumers that "1 GB = 1,000,000,000 bytes," no significant number of reasonable consumers are likely to be misled by SanDisk's use of this same definition.

A practice is not deceptive as a matter of law where it is sufficiently "commonplace in the market" such that no significant number of reasonable consumers is likely to be deceived by it. *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016) (lip balm tube design was not deceptive as a matter of law where the design was "commonplace in the market"); *see also, e.g.*, *Bush v. Mondelez Int'l, Inc.*, No. 16-02460-RS, 2016 U.S. Dist. LEXIS 174391, at *4-5 (N.D. Cal. Dec. 16, 2016) (snack packaging not deceptive as a matter of law where "consumers expect there to be some slack-fill in opaque snack containers"); *Gonzales v. Peter Thomas Roth Labs, LLC*, No. 17-01393, 2017 U.S. Dist. LEXIS 197060, at *6 (C.D. Cal. Nov. 17, 2017) (no deception where it was commonplace for high-end cosmetic creams to use otherwise deceptive oversized packaging); *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 17-05921-WHO, 2018 U.S. Dist. LEXIS 142074, at *13-14 (N.D. Cal. Aug. 21, 2018) (using the term "diet" in a soft drink name was not deceptive even if it did not match the dictionary definition because it matched the definition used in the soft drink market); *Becerra v. Coca-Cola Co.*, No. 17-05916-WHA, 2018 U.S. Dist. LEXIS 31870, at *8 (N.D. Cal. Feb. 27, 2018) (same); *McKinnis v. Kellogg USA*, No. 07-2611, 2007 U.S. Dist. LEXIS 96106, at *13 (C.D. Cal. Sept. 19, 2007) (Froot Loops cereal box was "not deceptive as a matter of law" where similar labeling was "familiar to a reasonable consumer").

Here, as discussed above, SanDisk's use of "1 GB = 1,000,000,000 bytes" is prescribed by industry standards set out by such organizations as the IEC, the CIPM, and the IEEE, and is used ubiquitously in the electronic storage device market. *See Suzuki v. Hitachi Glob. Storage Techs., Inc.*, No. 06-07289-MHP, 2007 U.S. Dist. LEXIS 51605, at *13 (N.D. Cal. July 17, 2007) ("[T]he entire industry of storage devices, including HDDs, CD-ROMs and other add-ons, represents storage space using gigabytes in the [base-10] decimal measurement."). Further, Apple products—which the USB drive at issue here was designed to work with—use the same definition of GB as SanDisk. Finally, consumers' smart phones and all of the dictionary definitions cited by Plaintiff in his complaint also include the definition followed by SanDisk. In light of such facts, as in the cases cited above, it cannot be that a significant number of consumers acting reasonably in the circumstances are likely to be deceived by SanDisk's use of the commonplace "1 GB = 1,000,000,000 bytes" definition. Plaintiff's claims therefore fail as a matter of law for this additional reason.

## IV. SANDISK'S USE OF A GOVERNMENT STANDARD IS NOT ACTIONABLE

Finally, as a further reason for dismissal, SanDisk's use of the "1 GB = 1,000,000,000 bytes" definition is not actionable as a matter of law because that definition has been adopted by the National Institute of Standards and Technology and thereby incorporated by statute into all commercial transactions in California.

Under California law, no claim in contract or under the UCL, CLRA, or FAL can stand where, as here, the claim is based on the defendant's use of a definition of a standard of measurement adopted by the U.S. Department of Commerce's National Institute of Standards and Technology ("NIST"). Cal. Bus. & Prof. Code § 12313 ("The definitions of basic units of weight and measure ... as published by the National Institute of Standards and Technology are recognized and shall govern ... transactions in this state."); Cal. Bus. & Prof. Code § 12301 ("No contract or pleading is invalid or subject to objection because the weights or measures expressed or referred to therein are weights or measures of the metric system."); *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 576 (2011) (plaintiffs' tort, contract, and consumer protection claims were barred where defendant complied with NIST standards); *Suzuki v. Hitachi Glob. Storage*

*Techs., Inc.*, No. 06-07289-MHP, 2007 U.S. Dist. LEXIS 51605, at *10 (N.D. Cal. July 17, 2007) (claim based on hard drive manufacturer's use of the base-10 decimal definition for gigabyte was barred because that definition has been adopted by NIST).

The plaintiff in *Suzuki*, for example, just like Plaintiff here, alleged that he was misled when he purchased a 250 GB disk drive made by the defendant because the defendant used the "1 GB = 1,000,000,000 bytes" base-10 definition instead of the base-2 definition used by the plaintiff's computer operating system. 2007 U.S. Dist. LEXIS 51605, at *2. The court took judicial notice on a motion to dismiss of the fact that the NIST had adopted the base-10 decimal definition for gigabyte used by the defendant, and the court held that California law incorporated that standard by statute into all commercial transactions. *Id.* at *7-13. The court concluded that "plaintiff's UCL claim fails under California's safe harbor doctrine because using [base-10] decimal notation to represent [electronic storage] capacity is clearly permitted by the legislature." *Id.* at *13.[3]

Similarly, in *Lopez*, a more recent controlling decision by the California Court of Appeal, plaintiffs alleged that defendant's odometers were over-measuring mileage by approximately two percent, and based on this allegation asserted claims for breach of contract, tortious misrepresentation, and violations of the UCL, CLRA, and FAL consumer protection statutes. 201 Cal. App. 4th at 576. The court held, however, that despite the discrepancy, the odometers were legally "correct" because they registered mileage within four percent accuracy, which was the tolerance level set by the NIST. *Id.* Because the odometers operated consistent with NIST standards and were legally "correct," plaintiffs could not state a claim for violation of the consumer protection statutes. *Id.* In evaluating the contract-based claims, the court further held that "because the odometer records the total distance according to the appropriate legal standard in California, as a matter of law there is no breach of any express warranty regarding the

---

[3] While the court in *Suzuki* only dismissed plaintiff's UCL claim under the safe harbor doctrine, subsequent controlling authority, including *Lopez*, have made clear that all claims based on the use of an NIST standard are barred. *See Lopez*, 201 Cal. App. 4th at 576.

odometers." *Id.* at 596. And because the odometers were legally "correct," consumers got exactly what they bargained for. *Id.*

Just as in *Lopez* and *Suzuki*, Plaintiff's claims here are barred because they are each based on SanDisk's use of a definition adopted by the NIST and incorporated by statute into California law: 1 GB = 1,000,000,000 ($10^9$) bytes. The NIST has further expressly rejected Plaintiff's proposed definition of $2^{30}$ bytes. Weibell Decl. Ex. 3 ("it is unacceptable to use ... giga (G) to represent $2^{30}$ = 1 073 741 824"). Consequently, Plaintiff's claims should be dismissed for this reason as well.

## CONCLUSION

For these reasons, SanDisk respectfully requests that the Court dismiss the Complaint. Although it is true that "leave to amend should be 'freely' given, that liberality does not apply when amendment would be futile." *Ebner*, 838 F.3d at 968. As in *Ebner*, "[s]uch is the case here" because no amendment can change what is on the product package, and no amendment can change the fact that SanDisk's use of the base-10 decimal definition is consistent with NIST standards, industry standards, and common usage.

Dated: October 29, 2018

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/ *Anthony J Weibell*
　　　　Anthony J Weibell

*Attorneys for Defendant*
SANDISK LLC