# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| JOHN DINAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>SANDISK LLC,<br><br>　　　　Defendant. | Case No. 18-cv-05420-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART**<br><br>[Re: ECF 13] |

Before the Court is Defendant Sandisk LLC's motion to dismiss Plaintiff John Dinan's Complaint in this consumer class action case. Mot., ECF 13. The Court held a hearing on the motion on April 25, 2019. For the reasons discussed below, Defendant's motion is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART.

## I. BACKGROUND

This case turns on the definition of "GB" (or "Gigabyte") in the context of computer data-storage devices. In the "base-2" (or "binary") counting system, 1 GB = 1,024 megabytes = 1,073,741,824 bytes (or $2^{30}$ bytes). Compl. ¶¶ 12–16. In accord with the binary system, several dictionaries define the term gigabyte as equaling 1024 megabytes. *Id.* All computers and digital processors, including Microsoft Windows, Linux, and Apple (except Mac OS X version 10.6 and later) and all other operating systems, as well as PDAs, digital cameras, cell phones, and gaming systems, use the binary system to display file sizes and data-storage capacity. *Id.* ¶¶ 18–20, 32. Approximately 97% of all computer users use the Windows operating system. *Id.* ¶ 19. Plaintiff alleges that the average consumer understands digital storage capacity and file size to be measured in binary. *Id.* ¶ 16. In another counting system, known as the "base-10" (or "decimal") system, 1 GB = 1,000,000,000 bytes (or $10^9$ bytes). So, 1 GB in the decimal system contains fewer bytes

than 1 GB in the binary system (1,000,000,000 vs. 1,073,741,824).

Defendant sells memory storage devices, including Universal Serial Bus ("USB") flash drives of varying sizes (*e.g.*, 256 GB, 128 GB, 64 GB, etc.). *Id.* ¶¶ 1, 10. Defendant advertises that its products have a certain number of GBs (*e.g.*, 256 GB); Defendant calculates the GBs in its products using the decimal system. *Id.* ¶¶ 21, 31–34. That is, 1 GB in Defendant's products equals 1,000,000,000 bytes, not 1,073,741,824 bytes. Plaintiff is a California citizen who purchased Defendant's 64 GB iXPAND Flash Drive USB 3.0. *Id.* ¶ 3. In purchasing the drive, he believed that he was receiving 64 *binary* GBs, but instead he received 64 *decimal* GBs, which is 6.7% less storage capacity than he was expecting to receive. *Id.* ¶¶ 25, 37–39.

Plaintiff alleges that Defendant does not disclose to the consumer the discrepancy between Defendant's decimal-GB offering and the expected binary-GB offering. *Id.* ¶ 21. On the front of the packaging, Defendant puts the number of GBs in conspicuous, large, differently colored text. *Id.* ¶ 27. Plaintiff acknowledges that on the back of the packaging, Defendant discloses that "1 GB = 1,000,000,000 bytes," but he argues that this disclosure is inconspicuous fine print. *Id.* ¶¶ 29–30. Plaintiff also alleges that Defendant does not direct consumers' attention to the back of the packaging. *Id.* ¶ 30. And Plaintiff alleges that the storage amounts used by Defendant (*e.g.*, 256 GB, 128 GB, and 64 GB) are consistent with the binary system. *Id.* ¶ 24.

Based on these allegations, Plaintiff claims that Defendant misleads consumers into believing that each storage product contains a certain number of binary GBs, which leads consumers to believe that the products have more bytes of storage than they actually contain. *See, e.g.*, *id.* ¶¶ 21, 36. These misleading representations cause consumers to pay more for the drives than they otherwise would pay. *Id.* ¶¶ 42–45. Plaintiff thus brings the following causes of action on behalf of himself and the putative class: (1) breach of contract; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; and (4) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.* The class is defined as "[a]ll individuals and entities in the United States who purchased a Sandisk USB Drive within the applicable statutes of limitations preceding the filing of this lawsuit," with a

2

subclass for individuals in the state of California who purchased the products. *Id.* ¶ 47.

## II. REQUESTS FOR JUDICIAL NOTICE AND ADDITIONAL FACTS

The Court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *See Lee v. City of LA.*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Both Defendant and Plaintiff request that the Court take judicial notice of certain facts and documents.

The Court summarily rejects Plaintiff's request as untimely because it was filed well after the deadline for any opposition. *See* ECF 19. In any event, the Court does not need to rely on any of the requested documents to resolve this motion.

Defendant requests that the Court take judicial notice of several documents, none of which Plaintiff opposes. First, Defendant asks the Court to take judicial notice of the packaging for the product Plaintiff purchased because it is incorporated by reference into the Complaint. Mot. at 7. The request for judicial notice is GRANTED as to the packaging. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). Based on this submission, Defendant notes that on the front of the packaging, the large "64 GB" representation is accompanied by an asterisk. On the back, the asterisk is right next to the disclosure reading "1GB

3

= 1,000,000,000 bytes." Wiebell Decl. ISO Mot., Ex. 1, ECF 14-1. The disclosure is in fine print, but legible. The packaging also conspicuously displays a disclosure on the front near the "64 GB" stating that the USB drive is "Made for iPhone | iPad." *Id.* Elsewhere on the front, the package states that the drive is "For iPhone, iPad, and computers." *Id.*

Second, Defendant requests that the Court take judicial notice that the decimal system is the standard set by the U.S. Government. Defendant asks the Court to take judicial notice of certain information in the U.S. Code and the Federal Register, as well as Guidelines published by the Department of Commerce. Mot. at 7 (citing Weibell Decl., Exs. 2 & 3). The request for judicial notice is GRANTED as to the Government standard because it is available in public government documents, not subject to reasonable dispute. *See Khoja*, 899 F.3d at 999, 1001. These documents show that the International System of Units ("SI"), or metric system, is "the preferred system of weights and measures for United States trade and commerce," 15 U.S.C. §§ 205b–205c, and the Department of Commerce has made clear that the SI system uses "powers of 10" (*i.e.*, decimal), and "one kilobit represents 1000 bits." Mot. at 2 (quoting Weibell Decl., Ex. 2 (*Metric System of Measurement: Interpretation of the International System of Units for the United States*, 63 Fed. Reg. 40334, 40338 (July 28, 1998))); *see also* Weibell Decl., Ex. 3 (2008 Guide for Use of the International System of Units (SI) by National Institute of Standards and Technology). The Department of Commerce has also stated that "it is inappropriate to use [SI prefixes] to represent powers of 2" (*i.e.*, binary). Webell Decl., Ex. 2 (63 Fed. Reg. at 40338).

Third, Defendant asks the Court to take judicial notice of certain dictionary definitions because they are incorporated by reference into the Complaint. Mot. at 7 (citing Compl. ¶¶ 12–16). The request for judicial notice is GRANTED as to the definitions. *See Branch*, 14 F.3d at 454 ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss."). These three dictionaries each show both (as Plaintiff alleges) that a gigabyte equals 1024 megabytes (*i.e.*, binary) and also that a gigabyte can mean 1 billion bytes (*i.e.*, decimal). *See* Weibell Decl., Ex. 6–8.

Finally, Defendant asserts that the decimal system is the industry standard used by all

4

manufacturers of storage devices, asking the Court to take judicial notice of an Apple, Inc. support website and a website describing the history of the adoption of this standard by the International Electrotechnical Commission. *See* Mot. at 2–3. However, the truth of the information in the websites is not properly subject to judicial notice because it is subject to reasonable dispute. *Khoja*, 899 F.3d at 999. Thus, Defendant's request is DENIED with respect to the industry standard, and the Court does not consider this evidence in deciding this motion.

## III. LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* On a motion to dismiss, the Court's review is limited to the face of the complaint and matters judicially noticeable. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1)

5

undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

**IV. DISCUSSION**

In the instant motion, Defendant moves to dismiss all four of Plaintiff's claims. *See* Mot. at iv. Defendant makes three principle arguments as to why the claims must be dismissed: (1) the "product labeling precludes Plaintiff's claims," Mot. at 7–10; (2) Defendant's "use of an industry standard is not actionable," *id.* at 10–11; and (3) Defendant's "use of a government standard is not actionable," *id.* at 11–13—that is, that Defendant's use of the decimal system on the packaging is protected under California's statutory safe harbor. Because the Court agrees with Defendant's first argument, it does not address the second and third. The Court first addresses Plaintiff's UCL, CLRA, and FAL claims, and then turns to Plaintiff's contract claim.

**A. California Consumer Protection Laws: UCL, CLRA, and FAL**

Plaintiff's theory of liability for his misrepresentation claims under the UCL, CLRA, and FAL is that Defendant's use of "GB" on its packaging would lead a reasonable consumer to believe he is getting binary GBs, when in fact he is getting decimal GBs—that is, that he believed he was receiving more bytes than he actually received. *See, e.g.*, Compl. ¶¶ 74–75, 95, 105–06; *see also* Opp. at 11. Defendant argues that no reasonable consumer would be misled by Defendant's use of "GB", such that Plaintiff cannot state a claim under these laws. The Court first discusses the relevant case law and then analyzes the facts here.

**1. Relevant Law**

Claims under the UCL, CLRA, and FAL "are governed by the 'reasonable consumer' test." *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citation omitted). Under this test, a plaintiff must allege that "members of the public are likely to be deceived" by the alleged misrepresentation. *Id.* (citation omitted). "This requires more than a mere possibility that [the defendant's] label 'might conceivably be misunderstood by some few consumers viewing it in

an unreasonable manner.'" *Ebner*, 838 F.3d at 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 507–08 (2003)). The reasonable consumer standard "requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105. Cal. App. 4th at 507–08). Because what a reasonable person would believe is generally a question of fact, it is a "rare situation" in which a motion to dismiss will be granted for failure to satisfy this test. *Williams*, 552 F.3d at 938.

Time and again, the Ninth Circuit and district courts therein have held that allegations do not satisfy the reasonable consumer test where the packaging containing the alleged misrepresentation includes disclosures that makes the meaning of the representation clear.[1]

Perhaps the clearest example of this result is the Ninth Circuit's decision in *Freeman v. Time, Inc.*, 68 F.3d 285, 287 (9th Cir. 1995). In *Freeman*, the plaintiff Michael Freeman received two mailers containing sweepstake promotional materials that had "statements in large type representing that Freeman won the sweepstakes, qualified by language in smaller type indicating that Freeman would win only if he returned a winning prize number." 68 F.3d 285, 287 (9th Cir. 1995). For example, the promotion stated, "If you return the grand prize winning number, we'll officially announce that MICHAEL FREEMAN HAS WON $1,666,675.00 AND PAYMENT IS SCHEDULED TO BEGIN." *Id.* The promotion also contained several indications that Freeman could enter into the sweepstakes and that the sweepstakes would occur on a certain date. *Id.* In affirming dismissal of Freeman's consumer-protection claims, the Ninth Circuit held that no reasonable consumer would be deceived by the promotions because they "expressly and repeatedly state[d] the conditions which must be met in order to win" and "[n]one of the qualifying language is hidden or unreadably small." *Id.* at 289. The Court also noted that "[t]he qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it." *Id.*

In *Bobo v. Optimum Nutrition, Inc.*, the district court dismissed the plaintiff's consumer-

---

[1] Defendant raises these cases in its motion, but Plaintiff does not discuss them or Defendant's arguments related to them in his opposition.

7

1  protection claims because no reasonable consumer could have been misled by the packaging at
2  issue. No. 14-cv-2408, 2015 U.S. Dist. LEXIS 187233, at *9–*10 (S.D. Cal. Sept. 11, 2015).
3  There, the plaintiff claimed that the packaging on the defendant's powdered protein products
4  misled reasonable consumers into believing that the powder was 100% protein because the
5  products said on the front "Gold Standard 100% [protein type]." In rejecting this argument, the
6  court noted that "[a] plaintiff cannot pursue a claim based on a statement that can only be
7  misleading when the information surrounding it is ignored." *Id.* at *9. Elsewhere on the front of
8  the packaging, the label indicated that the product was "naturally & artificially flavored,"
9  including listing the flavor itself, and also contained the statement, "100% of the protein from
10 [source]." *Id.* at *10. Likewise, on the back, the label had a "legible bulleted list" stating,
11 "[n]early 79% protein by weight." *Id.* at *12. Given these disclosures, the court held that no
12 reasonable consumer could believe that the powders contained only protein.

13       In *Castagnola v. Hewlett-Packard Co.*, the court held that no reasonable consumer could
14 think that the service he was signing up for was free where the sign-up webpage "contain[ed] four
15 references to the fact that there [were] 'offer details'" and those details stated that there was a fee.
16 No. 11-CV-05772-JSW, 2012 U.S. Dist. LEXIS 82026, at *27–28* (N.D. Cal. June 13, 2012).
17 The court held that "[a]lthough the text of the offer details [were] in a smaller font than the font
18 used to promote the [service]," the text was not "unreadably small." *Id.* at *28. The offer details
19 were also located on the same page and in close proximity to the relevant statements. *Id.* at *28–
20 *29. This was sufficient for the court to hold that no reasonable consumer could believe there was
21 no fee.

22       Finally, in *Garcia v. Sony Computer Entertainment America*, the court held that the
23 plaintiff had not stated a claim under the UCL against defendant Sony (seller of the PlayStation
24 gaming console) because the alleged misrepresentations on Sony's PlayStation packaging
25 included an asterisk directing the consumer to "[s]ee the product documentation for details." 859
26 F. Supp. 2d 1056, 1060 (N.D. Cal. 2012). The plaintiff alleged in part that Sony's PlayStation 3
27 ("PS3") system was not compatible with all PS3 games, making Sony's representations on the PS3
28 packaging that it was "designed to play PlayStation 3 format software" misleading. *Id.* In

8

rejecting the plaintiff's UCL claim based in part on these alleged misrepresentations, the court held that the representations were only "partial statements, and d[id] not rise to the level of affirmative misrepresentations," especially in light of the "specific caveat" that the consumer must see the product documentation for details. *Id.* at 1065. Because the plaintiff had not alleged details about the additional disclosure contained in the product documentation, the court held that the plaintiff "cannot make out a plausible claim for an affirmative misrepresentation where it is self-evident that he has selectively omitted portions of the alleged representation attributed to defendants." *Id.*

The Ninth Circuit has also indicated that the disclosure needed to "cure" any potential misrepresentation depends on the scope or pervasiveness of the alleged misrepresentation. In *Williams v. Gerber Products Co.*, the Ninth Circuit held that the district court should not have dismissed the plaintiff's consumer-protection claims because a reasonable consumer could have believed that the defendant Gerber's fruit snack products were made with real fruit juice. 552 F.3d 934, 939 (9th Cir. 2008). In so holding, the court noted that "there [were] a number of features of the packaging Gerber used for its Fruit Juice Snacks product which could likely deceive a reasonable consumer," including the product being called "fruit juice snacks," the packaging including "pictures of a number of different fruits," and the label saying that it was made with "fruit juice and other natural ingredients." *Id.* The court also rejected the district court's holding that no reasonable consumer could believe otherwise given that the product's ingredient list did not include fruits. *Id.* The Ninth Circuit concluded that reasonable consumers should not "be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* "Instead, reasonable consumers expect the ingredient list contains more detailed information about the product that confirms the other representation on the packaging." *Id.* at 939–40.

Finally, the Ninth Circuit has made clear that context and consumers' "common sense" matter to the inquiry as well. In *Ebner*, the Ninth Circuit upheld dismissal of the plaintiff's consumer-protection claims, which alleged that the defendant's lip balm product misled consumers about the amount of lip balm in the tube because a portion of the balm was inaccessible

9

to the user. 838 F.3d at 962. In finding that no reasonable consumer would have been misled, the court first noted that it was "undisputed that the [product] label discloses the correct weight of included lip product." *Id.* at 965. It next noted that the type of container used was "commonplace in the market" and that the "reasonable consumer understands the general mechanics of these dispenser tubes and further understands that some product may be left in the tube to anchor the [balm] in place." *Id.* The court also emphasized that the consumer can see that some lip balm remains in the tube after full use, even if he cannot know how much remains.

Importantly, the Ninth Circuit distinguished *Williams*, which it said stood for the proposition that "*if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel the deception." *Id.* at 966. But in *Ebner*, "there [was] no deceptive act to be dispelled" because the weight label correctly stated the amount of product in the tube. *Id.* Moreover, the "weight label [did] not contradict other representations or inferences on [the product's packaging]," such as other "words, pictures, or diagrams adorning the package." *Id.* Because the product did not contain a representation as to how much of the product could be accessed, the court held that it was not plausible that a reasonable consumer would think he could access all of the lip balm.

### 2. Analysis

In light of this case law, the Court concludes that no reasonable consumer would believe based on Defendant's packaging that he was receiving more bytes than he actually received.

The Court starts with the background knowledge of the reasonable consumer. *See Ebner*, 838 F.3d at 965. Plaintiff alleges that a reasonable consumer understands measurements of storage capacity and file size to be consistent with the binary system. *Id.* ¶ 16. But this allegation has questionable plausibility given Defendant's judicially noticeable facts to the contrary. The Department of Commerce has officially adopted the metric system (*i.e.* decimal) as its measurement system, going so far as to say that "it is inappropriate to use [SI prefixes]" which includes Giga (the "G" in "GB"), "to represent powers of 2" (*i.e.*, binary). Webell Decl., Ex. 2 (63 Fed. Reg. at 40338). California has likewise adopted the metric system (*i.e.*, decimal) as the basic unit of measure for all transactions in the state. *See* Cal. Bus. & Prof. Code § 12313; Cal. Bus. &

10

Prof. Code § 12301. Moreover, as Defendant shows, dictionary definitions include both decimal and binary definitions. And it is not a stretch to say that the average consumer understands prefixes like kilo-, micro-, and giga- to be decimal measurements, as those meanings are pervasive measurements throughout this country. By contrast, the binary system is much more limited in usage.

Even assuming it is plausible that a reasonable consumer would not understand "GB" on the packaging to be in decimal, the scope of the alleged misrepresentation on the packaging at issue here is limited. The only alleged misrepresentation is the "GB." Plaintiff does not allege that any other words, pictures, or diagrams on the packaging are misleading. *See Ebner*, 838 F.3d at 966; *contra Gerber*, 552 F.3d at 939. As to this sole representation, "64 GB" is not strictly false; the drives *do* contain 64 GBs, just in decimal, not binary. Moreover, the packaging includes at least two statements that would indicate to the reasonable consumer that "GB" is a *decimal* measurement, not binary; the packaging says it is made for iPads and iPods, which display storage information in decimal form. *Contra Gerber*, 552 F.3d at 939 (noting that other representations on the package confirmed the consumer's belief that the product was made with real fruit). The Court recognizes that in one of those statements, the package also states it is compatible with computers, most of which allegedly display storage information in binary. However, each of these facts strongly implies that Plaintiff's reasonable consumer looking at this packaging would not believe that "GB" is in binary, even without reference to any curative disclosure on the packaging.

That said, at the hearing on the motion, Plaintiff propounded a different "reasonable consumer" theory than what he alleges in his Complaint. Under this new theory, the reasonable consumer does not understand that storage capacity is measured in binary as opposed to decimal; in fact, he does not understand that these two different systems exist at all. All the reasonable consumer knows is that he needs a certain number of bytes of storage, *e.g.*, 64 GBs, as shown on his Windows computer, so he goes out and purchases a 64 GB Sandisk drive. To his surprise, he learns when he gets home that his 64 GB Sandisk drive does not contain enough bytes. He does not really understand why—because he does not know that his computer is binary and his device is decimal—he just knows that Defendant promised 64 GBs and did not deliver. The Court agrees

11

that this scenario plausibly would lead the reasonable consumer to be misled, even though the alleged misrepresentation is actually true and the packaging references iPads and iPods. Because Plaintiff could amend his Complaint to allege this reasonable consumer theory, his current implausible theory does not necessarily doom his claims.

What ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting: the package *actually discloses* the fact that Plaintiff complains it omits, namely, the total number of bytes of storage. It is simply not plausible that a reasonable consumer (whether she understands the binary/decimal distinction or not) would be deceived by the number of bytes in the storage device, given that the packaging tells her exactly how many bytes she will be getting. The consumer is notified of this disclosure by an asterisk directly next to "GB" and a clear explanation elsewhere on the package. To the extent Plaintiff could amend to allege that the reasonable consumer does not know how many bytes her *computer* requires (*i.e.*, how many bytes are in 64 binary GBs), Plaintiff's claims are more appropriately directed at the computer manufacturers. Sandisk, for its part, has done all the law requires it to do by telling the consumer how many bytes of storage each device provides.

The Court readily recognizes that none of the disclosure cases discussed above is directly analogous to the situation here. The disclosures at issue in *Freeman* and *Bobo* were much more extensive than the disclosure here. However, the references to the offer detail disclosures in *Castagnola* were somewhat more similar to the asterisk here; though the references were more numerous there, they expressly directed the consumer to a readily accessible disclosure, just as the asterisk does here. And *Bobo* is even more on point, with only a single reference to a disclosure published elsewhere. Though the disclosure there ("[s]ee the product documentation for details") was arguably more explicit than an asterisk, the disclosure itself was not on the same package, but instead elsewhere inside of the package. *Bobo*, 859 F. Supp. 2d at 1065. Here, the disclosure was located on the same package.

Moreover, asterisks are common in both commerce and elsewhere to denote that the "reader" should be aware that there is more than meets the eye. *Cf. Ebner*, 838 F.3d at 965 (looking to what is "commonplace in the market"). Though Defendant's packaging did not say in

12

as many words to look to the back of the package, the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read. This fact, and others, distinguishes this case from *Gerber*. Not only was the package there rife with potentially misleading representations, as opposed to the sole alleged misrepresentation here, but also nothing on the package told the consumer to look to the ingredient list; instead, the ingredient list was simply there to "confirm" the other representations. *Gerber*, 552 F.3d at 939–40. Here, by contrast, the asterisk directly informs the consumer that he should be aware that he needs to look elsewhere on the package before applying his own assumptions. For this same reason, it matters less that the disclosure is allegedly not conspicuous on the package. Once the consumer is directed to look for the disclosure because of the asterisk, he knows to look for it and can find it in the fine print. *See* Weibell Mot., Ex. 1.

Thus, under both Plaintiff's pled theory and an alternate theory offered at the hearing, Plaintiff has failed to state a claim that Defendant's packaging is misleading under the UCL, FAL, and CLRA.[2] However, the Court recognizes that this is the first version of the Complaint and Plaintiff requests leave to amend under Federal Rule of Civil Procedure 15(a)'s liberal standard. On this basis, the Court will allow leave to amend these claims. Thus, Plaintiff's claims are DISMISSED WITHOUT PREJUDICE.

### B. Breach of Contract

Plaintiff's breach of contract claim is easier to resolve than his consumer-protection claims. Plaintiff's theory of liability under his breach of contract claim is that "Defendant promised to provide a USB Flash Drive to Plaintiff with a storage capacity of 64 GBs in exchange for the purchase price," but did not live up to that promise. Opp. at 19 (citing Compl. ¶ 67). By this, Plaintiff means that Defendant promised to provide 64 binary GBs. But what Defendant actually promised, as expressly noted on the packaging, was 64 decimal GBs, wherein "1 GB = 1,000,000,000 bytes." Thus, Defendant provided exactly what was promised by the express terms

---

[2] *Talwar v. Creative Labs, Inc.*, No. CV 05-3375 FMC AJWX, 2006 WL 4568797, at *1 (C.D. Cal. Aug. 11, 2006), is not to the contrary because the defendants in that case did not argue, nor did the court decide, that no reasonable consumer would be misled by the packaging.

13

of the agreement. Plaintiff's failure to read those terms does not provide him grounds for a breach of contract claim. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[F]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."); *see also Vernon v. Drexel Burnham & Co.*, 52 Cal. App. 3d 706, 714 (1975).

Unlike his consumer-protection claims, Plaintiff cannot possibly cure this fatal defect with amendment. As such, the claim is DISMISSED WITH PREJUDICE.

## V. ORDER

Based on the foregoing, Defendant's motion is GRANTED WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART. Plaintiff must file his amended complaint **on or before June 21, 2019**. Failure to meet the deadline to file an amended complaint or cure the deficiencies in this Order will result in a dismissal of Plaintiff's claims with prejudice. The parties' stipulated discovery deadlines are due **on or before June 14, 2019**.

**IT IS SO ORDERED.**

Dated: May 31, 2019

_____
BETH LABSON FREEMAN
United States District Judge