# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

|  |  |
|---|---|
| JOHN DINAN et al, | Case No. 18-cv-05420-BLF |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO DISMISS AMENDED COMPLAINT WITHOUT LEAVE TO AMEND** |
| SANDISK LLC, | [Re: ECF 46] |
| Defendant. | |

This is a putative class action concerning the meaning of the term "GB" (or "gigabyte") as it is used to denote the capacity of electronic storage devices. Defendant SanDisk LLC, a manufacturer of such devices, uses GB on its product packaging to mean one billion bytes. Many computer operating systems, however, use GB to mean 1,073,741,824 bytes. Plaintiffs therefore contend that Defendant's use of GB is deceptive, causing the average consumer to believe that Defendant's products contain more storage space than they actually do. The Court previously granted Defendant's motion to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, but allowed Plaintiffs to amend their complaint. Plaintiffs subsequently filed an amended complaint, which Defendant again moves to dismiss pursuant to Rule 12(b)(6). The Court held a hearing on the instant motion on December 19, 2019, and it is now ripe for decision. For the reasons discussed below, Defendant's motion to dismiss is GRANTED WITHOUT LEAVE TO AMEND.

## I. BACKGROUND

The following allegations derive from the operative Amended Complaint, ECF 43 ("AC"), which the Court must accept as true at the motion to dismiss stage, *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).

Defendant SanDisk, LLC makes and sells various electronic storage devices, including, as relevant here, Universal Serial Bus ("USB") flash drives and removable memory cards.  AC ¶ 1, 4. These storage devices "provide supplemental memory storage" for computers and other electronic devices.  *Id.* ¶ 8.  Because Defendant offers storage devices of varying storage capacities, *e.g.*, 256 GB, 128 GB, 64 GB, etc., *id.* ¶ 10, the packaging for each product identifies the number of GBs the product purportedly contains, *id.* ¶ 35.  However, GB "is an ambiguous term" which "can have two meanings." *Id.* ¶ 21.  In the "base-2" or "binary" counting system, 1 GB = 1,073,741,824 bytes (or $2^{30}$ bytes).  *Id.* ¶¶ 13-16, 42.  In another counting system, known as the "base-10" or "decimal" system, 1 GB = 1,000,000,000 bytes (or $10^9$ bytes).  *Id.* ¶¶   So, 1 GB in the decimal system contains approximately 7% fewer bytes than 1 GB in the binary system (1,000,000,000 vs. 1,073,741,824).  *Id.* ¶¶ 30, 33.

Defendant denotes the storage capacity of its products using the decimal system.  *Id.* ¶ 36. That is, 1 GB in Defendant's products equals 1,000,000,000 bytes, not 1,073,741,824 bytes.

However, other than Mac OS X version 10.6 and later, all computer operating systems— including Microsoft Windows, Linux, and earlier Apple operating systems—use the binary system to display file sizes and data storage capacity.  *Id.* ¶¶ 18, 43.  The same is true of other devices that use flash memory, such as PDAs, digital cameras, cell phones, and gaming systems.  *Id.* ¶ 43. Apple, meanwhile, only has about 9% of the computer operating system market.  *Id.* ¶ 27. Consequently, many of the customers who buy Defendant's products use them for computers and other devices that employ the binary system.  *Id.* ¶¶ 23, 39.  Named Plaintiff John Dinan is one such customer.  Dinan bought a SanDisk 64 GB iXPAND Flash Drive USB 3.0.  *Id.* ¶ 1.  Unaware of the difference between the decimal and binary systems of measurement, Dinan believed he was receiving 64 *binary* GBs, but he instead received 64 *decimal* GBs.  *Id.*  Named Plaintiffs Bren Cohee and Vamsi Choday experienced the same disappointment when Cohee purchased a SanDisk Ultra Plus 64 GB microSDXC UHS-I Card and Choday purchased a SanDisk 256 GB flash drive for use on devices that use the binary system.  *Id.* ¶¶ 2, 3.

Plaintiffs allege that Defendant does not "meaningfully, adequately, or conspicuously" disclose to the consumer the discrepancy between Defendant's decimal-GB offering and the

binary-GB needs of many computer systems. *Id.* ¶ 36. Plaintiffs acknowledge that on the back of the packaging, Defendant discloses that "1 GB = 1,000,000,000 bytes," but he argues that this disclosure is made in "fine print." *Id.* ¶¶ 36-37. By contrast, say Plaintiffs, Defendant puts the number of GBs on the front of the packaging "in font that is larger and in a different color than surrounding text." *Id.* ¶ 35. Plaintiffs further allege that Defendant "does not even direct consumer[s'] attention to the back of the packaging," where the disclosure is found. *Id.* ¶ 38.

Thus, according to Plaintiffs, Defendant's misleading use of the term "GB" leads consumers believe that Defendant's storage products contain more bytes of storage then they actually do. *Id.* ¶¶ 48-50. As a result, consumers pay more for the products than they would otherwise be willing to pay. *Id.* ¶ 53. In some cases, moreover, the consumer may be "unable to use [the product] at all" because its capacity is inadequate to serve the purpose for which the consumer purchased it. *Id.* ¶ 34.

Plaintiffs further allege that "Defendant's conduct is intentional," AC ¶ 12, in that "Defendant is fully aware that its USB flash drives will be used on computers and other devices that employ a binary system for measurement," *id.* ¶ 28. Defendant also sells its products "in sizes that are consistent with the base-2 system," i.e., "in 8 GB, 16 GB, 32 GB, 64 GB, 128 GB, and 256 GB sizes." *Id.* ¶ 32. Plaintiffs claim that Defendant does this in order to "mislead the public." *Id.*

Based on the above allegations, Plaintiffs have asserted the following four claims: (1) a claim for common law breach of contract; (2) a claim for violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*; (3) a claim for violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.*; and (4) a claim for violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.* Counts (1), (2), and (3) are brought on behalf of the named Plaintiffs individually, a nationwide Class, and a California Subclass; Count (4) is brought on behalf of the named Plaintiffs individually and the California Subclass. Specifically, the Class is defined as "[a]ll individuals and entities in the United States who purchased a Sandisk USB Drive within the applicable statutes of limitations preceding the filing of this lawsuit," and the Subclass is defined

as "[a]ll individuals in the State of California who purchased a Sandisk USB Drive within the applicable statutes of limitations preceding the filing of this lawsuit." AC ¶ 58.

In December 2018, Defendant moved to dismiss all four claims in the original Complaint, ECF 1 ("Compl."), under Federal Rule of Civil Procedure 12(b)(6). ECF 13. The Court granted the motion with leave to amend as to Counts (2), (3), and (4) (the UCL, CLRA, and FAL claims, respectively) and without leave to amend as to Count (1) (the breach of contract claim). ECF 37 ("First MTD Order"). Plaintiffs then amended their complaint, ECF 43, and Defendant filed the instant motion to dismiss on August 2, 2019. ECF 46 ("Mot.").

## II.    JUDICIAL NOTICE OF ADDITONAL FACTS

Although the parties do not make any new requests for judicial notice in connection with the instant motion, Defendant relies upon certain facts of which the Court took judicial notice in its order granting Defendant's motion to dismiss the original Complaint. *See* Mot. at 2 (citing First MTD Order at 3-5). Moreover, Plaintiff now challenges some of these facts. The Court therefore clarifies the judicially noticeable facts at hand.

A court may take judicial notice of documents referenced in the complaint, as well as matters in the public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1125–26 (9th Cir. 2002). In addition, the Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records, including judgments and other court documents, are proper subjects of judicial notice. *See, e.g.*, *United States v. Black*, 482 F.3d 1035, 1041 (9th Cir. 2007). However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

First, the Court previously took judicial notice of the packaging for the SanDisk 64 GB iXPAND Flash Drive USB 3.0—the product that named Plaintiff Dinan purchased—because it was incorporated by reference into the Complaint. First MTD Order at 3-4; *see* ECF 14-1

(photograph of packaging). The Court found that:

> [O]n the front of the packaging, the large "64 GB" representation is accompanied by an asterisk. On the back, the asterisk is right next to the disclosure reading "1GB = 1,000,000,000 bytes." The disclosure is in fine print, but legible. The packaging also conspicuously displays a disclosure on the front near the "64 GB" stating that the USB drive is "Made for iPhone | iPad." Elsewhere on the front, the package states that the drive is "For iPhone, iPad, and computers."

First MTD Order at 3-4 (citations omitted).

Defendant relies upon these findings in the present motion. Mot. at 2. Plaintiffs, for their part, do not appear to dispute any of these facts. The Amended Complaint acknowledges the existence of the "1GB = 1,000,000,000 bytes" disclosure, the asterisk, and the iPhone/iPad compatibility notices in the Amended Complaint. AC ¶¶ 21, 36, 40. Plaintiffs simply emphasize that "the packaging also states that the device is compatible with various Windows operating systems." *Id.* ¶ 39. Accordingly, because the packaging for the SanDisk 64 GB iXPAND Flash Drive USB 3.0 is also incorporated by reference into the Amended Complaint, the Court again takes judicial notice of that packaging. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.").

Importantly, however, the Court takes judicial notice only of the packaging for the SanDisk 64 GB iXPAND Flash Drive USB 3.0 and not for the products purchased by named Plaintiffs Cohee and Choday. Cohee and Choday are alleged to have purchased a SanDisk Ultra Plus 64 GB microSDXC UHS-I Card and a SanDisk 256 GB flash drive, respectively, and neither party has submitted the packaging for those products.

Second, Defendant asserts that the decimal definition of GB "is the legal standard set by the U.S. Government, a fact of which this Court previously took judicial notice." Mot. at 2. To be precise, the Court took judicial notice of certain statutes and Federal Register documents. *See* First MTD Order at 4. First, in 15 U.S.C. § 205b, Congress has designated "the metric system of measurement as the preferred system of weights and measures for United States trade and

commerce." Congress has further defined the "metric system of measurement" to be the International System of Units ("SI") "as interpreted or modified for the United States by the Secretary of Commerce." 15 U.S.C. § 205c(4). "The Secretary has delegated this authority to the Director of the National Institute of Standards and Technology" (NIST), an agency of the Department of Commerce. *Metric System of Measurement: Interpretation of the International System of Units for the United States*, 63 Fed. Reg. 40334, 40334 (July 28, 1998); *see also* 15 U.S.C. § 272[1]. "In implementation of this authority," NIST published a notice setting forth "the interpretation of the International System of Units for the United States by the Department of Commerce" in the Federal Register. 63 Fed. Reg. at 40334. That notice defines, *inter alia*, the SI prefixes (*e.g.*, kilo, mega, and giga). *See id.* at 40337-38. Specifically, NIST makes clear that "the SI prefixes strictly represent powers of 10" and that it is therefore "inappropriate to use them to represent powers of 2." *Id.* at 40338. "Thus," says NIST, "1 kbit = $10^3$ bit = 1000 bit and *not* $2^{10}$ = 1024 bit, where 1 kbit is one kilobit." *Id.* Table 5 of the notice then specifies that giga means $10^9$. *Id.*

The NIST notice further provides that "additional information on the SI may be found in the NIST Special Publication (SP) 811, *Guide for the Use of the International System of Units (SI)*." 63 Fed. Reg. at 40340. As relevant here, the NIST Guide reiterates that "the SI prefixes refer strictly to powers of 10" and that "[t]hey should not be used to indicate powers of 2." ECF 14-3 at 4 (excerpts from the 2008 edition of NIST Special Publication 811, *Guide for the Use of the International System of Units (SI)*). It then goes on to explain that other prefixes denoting binary powers "should be used in the field of information technology to avoid the incorrect usage of the SI prefixes":

> The names and symbols for the prefixes corresponding to $2^{10}$, $2^{20}$, $2^{30}$, $2^{40}$, $2^{50}$, and $2^{60}$ are, respectively: kibi, Ki; mebi, Mi; gibi, Gi; tebi, Ti; pebi, Pi; and exbi, Ei." *Id.* Thus, for example, one kibibyte would be written: 1 KiB = 210 B = 1024 B, where B denotes a byte.

---

[1] Section (a) of this statute establishes the "National Institute of Standards and Technology" "within the Department of Commerce." 15 U.S.C. § 272(a). Section (b) lists the functions of NIST as including: "to develop, maintain, and retain custody of the national standards of measurement, and provide the means and methods for making measurements consistent with those standards." *Id.* at § 272(b)(2).

*Id.* So, one gibibyte would denote $2^{30}$ bytes and would be abbreviated as 1 GiB.

In other words, $10^9$ (or 1,000,000,000) is the interpretation of giga published by NIST and, as such, the "preferred" interpretation of giga in "United States trade and commerce." As the Court previously explained, this fact is subject to judicial notice because it is "available in public government documents, not subject to reasonable dispute." First MTD Order at 4 (citing *Khoja*, 899 F.3d at 999). Indeed, under 44 U.S.C. § 1507, documents published in the Federal Register must be judicially noticed by the Court. *United States v. Woods*, 335 F.3d 993, 1001 (9th Cir. 2003); *see* 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed . . . .").

Yet, Plaintiffs resist this finding, claiming that "NIST does not affirmatively define Gigabyte in its Glossary to mean 1,000,000 bytes." Opp. at 23. According to Plaintiffs, "NIST gives no definition of GB at all." *Id.* In support of this contention, Plaintiffs cite Exhibits C and D to their Opposition, which purport to be screenshots of an online "Glossary" maintained by the "Computer Security Resource Center." ECF 47-3, ECF 47-4. Exhibit C appears to be the definition of "GB," which is listed as "None." ECF 47-3. Exhibit D appears to be the definition of "Gigabyte," which is likewise listed as "None." ECF 47-4. At the hearing, there was some confusion over the relationship amongst Exhibits C and D, the "Computer Security Resource Center," and NIST. Plaintiffs ultimately argued that the Computer Security Resource Center is part of NIST, and that the aforementioned "Glossary" is thus promulgated by NIST. Even assuming that is true, Plaintiffs have provided no information about the underlying website or, critically, the purpose it serves. The Glossary at issue does not purport to be an official publication of NIST, much less to constitute the "national standards of measurement" that NIST is charged with developing and maintaining, *see* 15 U.S.C. § 272(b)(2).

The notice in the Federal Register, by contrast, was expressly identified as "the interpretation of the International System of Units for the United States by the Department of Commerce" and promulgated pursuant to NIST's authority under 15 U.S.C. §§ 205c(4) and 272(b)(2). Moreover, publication in the Federal Register is the prototypical method of conducting a formal agency action. *Cf. Gen. Motors Corp. v. E.P.A.*, 363 F.3d 442, 450 (D.C. Cir. 2004) (For

United States District Court
Northern District of California

the purpose of judicial reviewability, "[a] 'promulgation' involves more formal agency action," such as publication in the Federal Register); *United States v. Cannon*, 345 F. App'x 301, 303 (9th Cir. 2009) ("Agencies must publish 'substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency' in the Federal Register.") (quoting 5 U.S.C. § 552(a)(1)(D)); *Friedman v. U.S. E.P.A.*, 220 F. App'x 678, 679 (9th Cir. 2007) (Publication in the Federal Register "satiates any notice concerns."). Hence, the unverified Glossary does not undermine or amend the formal interpretation that NIST has published in the Federal Register.

Nor do Plaintiffs suggest that giga has a different meaning when affixed to "byte." After all, the NIST notice and the accompanying Guide make clear that the decimal system of SI prefixes applies to units of bits and bytes "in the field of information technology." Accordingly, notwithstanding Plaintiffs' Exhibits C and D, the Court again takes judicial notice of the fact that the decimal definition of giga has been adopted by NIST as the preferred standard measurement for United States trade and commerce.

Third, the Court previously took judicial notice of certain dictionary definitions that were incorporated by reference into the initial Complaint. First MTD Order at 4 (citing *Branch*, 14 F.3d at 454 ("[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss.")). These same definitions are contained in the Amended Complaint, AC ¶¶ 13, 15-16, and the Court again takes judicial notice of them. The three dictionaries (the online Oxford English Dictionary; the online Merriam-Webster Dictionary; and Dictionary.com) each state that—as Plaintiffs' allege—a gigabyte equals 1024 megabytes or 1,073,741,824 bytes, but also that a gigabyte can mean "one billion bytes." ECF 14-6, 14-7, 14-8; *see* ECF 14 ¶¶ 7-9.

## III. LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure

12(b)(6).  In other words, "[a] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

In addition, because Plaintiffs' CLRA, FAL, and UCL causes of action are grounded in fraud, the AC must also satisfy "the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (holding that claims for false or misleading advertising under the CLRA, FAL, and UCL are "grounded in fraud" and applying Rule 9(b)).  To satisfy Rule 9(b), the plaintiff "must set forth *more* than the neutral facts necessary to identify the transaction." *Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir.1997) (emphasis in original).  That is, "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

In ruling on a Rule 12(b)(6) motion, a court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  A complaint must, however, contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

Generally, a motion to dismiss under Rule 12(b)(6) must rely solely on the contents of the pleadings.  *See* Fed. R. Civ. P. 12(d).  A court may, however, consider "matters of judicial notice" without converting a motion to dismiss into one for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Furthermore, a court need not accept as true "allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory,

9

United States District Court
Northern District of California

1    unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536

2    F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).

3    **IV.    DISCUSSION**

4         Defendant moves to dismiss the entire Amended Complaint.  The Court first addresses

5    Defendant's arguments with regard to Plaintiffs' claims under California's consumer protection

6    statutes (Counts 2, 3, and 4) and then turns to Plaintiff's claim for breach of contract (Count 1).

7         **A.    Counts 2, 3, 4: UCL, CLRA, and FAL Claims**

8         "Broadly stated: The UCL prohibits 'any unlawful, unfair or fraudulent business act or

9    practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by the

10   FAL' ([Cal. Bus. & Prof. Code] § 17200); the FAL prohibits advertising 'which is untrue or

11   misleading, and which is known, or which by the exercise of reasonable care should be known, to

12   be untrue or misleading' ([*id.* at] § 17200); and the CLRA prohibits specified 'unfair methods of

13   competition and unfair or deceptive acts or practices' ([Cal.] Civ. Code § 1770, subd. (a))."  *Hill v.*

14   *Roll Internat'l Corp.*, 195 Cal. App. 4th 1295, 1301 (2011) (alterations omitted).  As Plaintiffs

15   correctly state, Opp. at 9-10, the California Supreme Court has said that all three statutes "prohibit

16   'not only advertising which is false, but also advertising which, although true, is either actually

17   misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'"

18   *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Kasky v. Nike, Inc.*, 27

19   Cal. 4th 939, 951 (2002) (alterations omitted)).  Accordingly, Plaintiffs' claims under these

20   statutes are based on a theory of misleading—rather than false—advertising.  Specifically,

21   Plaintiffs contend that Defendant's use of "GB" on its packaging leads a reasonable consumer to

22   believe he is getting binary GBs, when in fact he is getting decimal GBs.  *See* Opp. at 18; AC ¶¶

23   48-50.  In named Plaintiff Dinan's case, for instance, Dinan believed he was receiving 64 *binary*

24   GBs, but he instead received 64 *decimal* GBs.  Plaintiff does not allege that any other words or

25   images on the packaging are misleading.

26        Defendant argues that these claims should be dismissed for two, independent reasons.

27   First, Defendant renews its contention that "no reasonable consumer would believe based on

28   Defendant's packaging that he was receiving more bytes than he actually received," which was the

                                                    10

ground for the Court's ruling in its previous dismissal order. *See* Mot. at 7; First MTD Order at 10. In Defendant's view, the Amended Complaint adds no new, saving allegations and hence fails for the same reason. Mot. at 6. Second, Defendant asserts that Plaintiffs' claims are "barred by a statutory safe harbor." *Id.* at 8. As set forth below, the Court holds that all three statutory claims are subject to dismissal for a combination of those two reasons.

### i.   No Reasonable Consumer

As the Court explained in its previous dismissal order, *see* First MTD Order at 6-7, Plaintiffs' claims under the UCL, CLRA, and FAL "are governed by the 'reasonable consumer' test." *Becerra v. Dr Pepper/Seven Up, Inc.*, No. 18-16721, 2019 WL 7287554, at *3 (9th Cir. Dec. 30, 2019) (citation omitted). To satisfy this test, a plaintiff must show "show that 'members of the public are likely to be deceived." *Williams*, 552 F.3d at 938 (quoting *Bank of West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992)). It is not enough to allege a "mere possibility" that Defendant's packaging "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)) (citing *Lavie v. Procter & Gamble Co.,* 105 Cal. App. 4th 496, 509 (2003)). "Rather, the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Id.* (quoting *Lavie*, 105 Cal. App. 4th at 509).

The Court is mindful that "the reasonable consumer standard . . . raises questions of fact that are appropriate for resolution on a motion to dismiss only in rare situations." *Reid v. Johnson & Johnson*, 780 F.3d 952, 958 (9th Cir. 2015) (internal quotation marks and citation omitted). Nevertheless, as the Court recounted in detail in its previous dismissal order, "the Ninth Circuit and district courts therein have held that allegations do not satisfy the reasonable consumer test where the packaging containing the alleged misrepresentation includes disclosures that makes the meaning of the representation clear." First MTD Order at 7-10 (describing the facts and holdings in *Freeman v. Time, Inc.*, 68 F.3d 285, 287 (9th Cir. 1995); *Bobo v. Optimum Nutrition, Inc.*, No. 14-cv-2408, 2015 U.S. Dist. LEXIS 187233, at *9–*10 (S.D. Cal. Sept. 11, 2015); *Castagnola v. Hewlett-Packard Co.*, No. 11-CV-05772-JSW, 2012 U.S. Dist. LEXIS 82026, at *27–28* (N.D.

Cal. June 13, 2012); *Garcia v. Sony Computer Entertainment America*, 859 F. Supp. 2d 1056, 1060 (N.D. Cal. 2012); *Williams*, 552 F.3d 934; and *Ebner*, 838 F.3d 958).

In *Freeman*, for instance, plaintiff Michael Freeman received two mailers containing sweepstake promotional materials that had "statements in large type representing that Freeman won the sweepstakes, qualified by language in smaller type indicating that Freeman would win only if he returned a winning prize number." 68 F.3d at 287 (e.g., "If you return the grand prize winning number, we'll officially announce that MICHAEL FREEMAN HAS WON $1,666,675.00 AND PAYMENT IS SCHEDULED TO BEGIN."*)*. Freeman argued that the mailers are misleading "since it is likely that the reader will review the large print and ignore the qualifying language in small print." *Id.* at 289. The Ninth Circuit rejected this theory. As the court explained, "[t]he promotions expressly and repeatedly state the conditions which must be met in order to win" and "[n]one of the qualifying language is hidden or unreadably small." *Id.* The *Freeman* court also noted that "[t]he qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it." *Id.*

Applying this case law to the original Complaint, this Court held that "no reasonable consumer would believe based on Defendant's packaging that he was receiving more bytes than he actually received." First MTD Order at 10. The Court now holds that, despite Plaintiffs' amendments, the Amended Complaint still fails to state a claim under California's consumer protection laws upon which relief may be granted. Because the Court's analysis relies upon several judicially noticed facts about the packaging, however, the Court limits its holding on this score to the product purchased by named Plaintiff Dinan (the SanDisk 64 GB iXPAND Flash Drive USB 3.0). *See supra* Part II. As previously discussed, the parties have not submitted exhibits or other evidence regarding the packaging of the products purchased by named Plaintiffs Cohee and Choday.[2]

---

[2] As apparent below, one of the key facts is the presence of an asterisk next to the allegedly misleading representation. The Court recognizes that, in their Opposition, Plaintiffs concede that they "purchased 64 GB or 256 flash drive[s], and in those purchases, there was a small asterisk next to the larger font 64 GB or 256 GB." Opp. 13. However, the Amended Complaint alleges that "Bren Cohee's device itself, which is clear and conspicuous, does not bear an asterisk at all," AC ¶ 41, which may also contradict the allegation in paragraph 3 of the Amended Complaint. *See*

Two factors were critical to the Court's dismissal of the claims as alleged in the original Complaint. First, as to the reasonable consumer's "background knowledge," the Court found the Complaint's allegation "that a reasonable consumer understands measurements of storage capacity and file size to be consistent with the binary system" to be of "questionable plausibility." First MTD Order at 10 (citing Compl. ¶ 16). The Court accepted as true the Complaint's allegation— which is repeated in the Amended Complaint—that most computer operating systems use the binary system to denote file sizes and storage needs. *See* Compl. ¶ 18; AC ¶ 18. The Court noted, however, that at least some "dictionary definitions include both decimal and binary definitions," and that the decimal meanings of the various SI prefixes are commonly used in other contexts. *See* First MTD at 10-11. Moreover, as established above, the U.S. Congress has deemed the decimal definition of gigabyte to be the "preferred" one for the purposes of "U.S. trade and commerce." *See* 15 U.S.C. § 205b. The California Legislature has likewise adopted the decimal system for all "transactions in this state." *See* Cal. Bus. & Prof. Code § 12313. Based on these facts, this Court said, "it is not a stretch to say that the average consumer understands prefixes like kilo-, micro-, and giga- to be decimal measurements." First MTD at 11.

Turning to the instant motion, the amendments in Plaintiffs' Amended Complaint do not put any of these facts in dispute. The Court therefore reiterates its skepticism that a reasonable consumer would assume Defendant's use of GB refers to a binary GB and thereby be misled.

In any event, Plaintiffs no longer allege that "the average consumer['s] understanding and measurement of storage capacity and file size is consistent with" the binary system." Compl. ¶ 16. Plaintiffs now assert that GB "is an inherently ambiguous term" and that it "can have two meanings." AC ¶¶ 21-22; *see* Opp. at 5. The implication appears to be—though the argument is not clearly made—that Defendant is therefore obligated to clarify the ambiguity. Yet, the second key factor undergirding this Court's first dismissal order is that Defendant has already done just

---

*id.* ¶ 3 (alleging that Cohee "did not see an * by GB on the packaging" and not that there was no asterisk on the packaging). It is not clear precisely what is meant by the "device itself": Did the packaging lack an asterisk, or only the product inside? Nevertheless, in light of this potential inconsistency, the Court does not believe it is appropriate to rely upon Plaintiffs' concession in their briefing. In addition, the Court's analysis looks to the appearance of the packaging, which cannot be gleaned from the papers.

13

that. As the Court explained:

> What ultimately dooms Plaintiff's claims is that Defendant tells the consumer exactly what she is getting: the package *actually discloses* . . . the total number of bytes of storage. It is simply not plausible that a reasonable consumer (whether she understands the binary/decimal distinction or not) would be deceived by the number of bytes in the storage device, given that the packaging tells her exactly how many bytes she will be getting.

First MTD Order at 12. That is, the back of the product packaging states, "1GB = 1,000,000,000 bytes." ECF 14-1. The Amended Complaint itself acknowledges this disclosure.[3] *See* AC ¶¶ 36-37, 40. The disclosure thus dispels any confusion that Defendant's use of GB could create. *See* First MTD Order at 12.

In response, Plaintiffs argue that a reasonable consumer would nevertheless be misled because (1) the disclosure is not sufficiently conspicuous, and (2) the disclosure cannot be understood by the reasonable consumer. The first of these arguments was addressed in detail in the Court's first dismissal order, and the Court is unpersuaded to change its prior determination that the disclosure is sufficiently conspicuous. To begin with, the Court rejects Plaintiffs' characterization of the disclosure as "illegible" in their brief. Opp. at 13. The Court has already found that the text on the packaging for the SanDisk 64 GB iXPAND Flash Drive USB 3.0 is small, but clear and readable. *See supra* Part II; ECF 14-1. Moreover, Plaintiffs do not allege that the disclosure is "illegible" in the Amended Complaint, so the Court interprets the use of "illegible" in the Opposition brief to be mere hyperbole.

Furthermore, as the Court recognized in its first dismissal order, the disclosure is "readily accessible" on the outside of the package. First MTD Order at 12. The consumer is then "notified of this disclosure by an asterisk directly next to" the large "GB" on the front of the package.[4] *Id.*, *see supra* Part II. That asterisk corresponds to another asterisk on the back of the package, right

---

[3] Plaintiffs' allegations as to the presence of the disclosure do not distinguish amongst Defendant's various products. Plaintiffs also do not argue in their Opposition that some of the products lack a disclosure. Accordingly, the Court construes these allegations to apply to all of the relevant products.

[4] Having taken judicial notice of the asterisks, the Court does not accept as true Plaintiffs' unsupported allegation that "Defendant does not even direct consumer[s'] attention to the back of the packaging to the inadequate 'disclosure,'" AC ¶ 38, to the extent it contradicts that fact. *See In re Gilead*, 536 F.3d at 1055.

14

next to the disclosure reading "1GB = 1,000,000,000 bytes." "Asterisks are common in both commerce and elsewhere to denote that the 'reader' should be aware that there is more than meets the eye." *Id.* Because "the asterisk calls the consumer's attention to the fact that there is supplemental information on the package that the consumer should read," "it matters less that the disclosure is allegedly not conspicuous on the package." *Id.* at 13. "Once the consumer is directed to look for the disclosure because of the asterisk, he knows to look for it and can find it in the fine print." *Id.*

None of these findings are undermined by the new allegations in the Amended Complaint. Plaintiffs instead bring new legal arguments in opposition to the instant motion. Specifically, Plaintiffs contend that "Ninth Circuit case law is settled that you cannot advertise or promote something in the front of a package and take it away in small print in [*sic*] the back of the package." Opp. at 13; *see also* Opp. at 2. It is true that the Ninth Circuit case "*Williams* stands for the proposition that *if* the defendant commits an act of deception, the presence of fine print revealing the truth is insufficient to dispel that deception." *Ebner*, 838 F.3d at 966 (emphasis in original). In *Williams*, the deception resulted from words and images suggesting that the defendant's Fruit Juice Snacks "contained the pictured fruits and that all the ingredients were natural." *Id.*; *see* 552 F.3d at 939. In the face of that deception, an ingredient list on the back of the packaging indicating that "the only fruit or juice content was white grape juice from concentrate" did not shield the defendant from liability. *Ebner*, 838 F.3d at 966; *see Williams*, 552 F.3d at 936, 939.

As relevant here, however, the Ninth Circuit has clarified that *Williams* and its progeny speak only to situations in which the defendant has actually committed an act of deception on the front of the package. *Ebner*, 838 F.3d at 966. The Ninth Circuit thus distinguished *Williams* in *Ebner*, a case in which the plaintiff alleged that the packaging for defendant's lip balm misled consumers about the amount of lip balm in the tube because a portion of the balm was inaccessible to the user. *Id.* at 962. In finding that a reasonable consumer would not be misled, the court noted that it was "undisputed that the [product] label discloses the correct weight of included lip product." *Id.* at 965. Moreover, the "weight label does not contradict other representations or

inferences on [the balm's] packaging," such as "other words, pictures, or diagrams adorning the package." *Id.* at 966. Unlike in *Williams*, the *Ebner* court explained, "there is no deceptive act to be dispelled." *Id.* As a result, the weight label is sufficient to prevent the package from being misleading; a "supplemental or clarifying statement about product accessibility" was not necessary. *Id.* at 964, 966.

The same is true here. The parties agree that GB can mean decimal gigabytes and that the packaging correctly identifies the number of decimal gigabytes provided by Defendant's products. In fact, Plaintiffs repeatedly emphasize that GB "can have two meanings." *See* AC ¶ 20, Opp. at 5. Although GB is allegedly "ambiguous," it is not, on its face, *deceptive*. Plaintiffs also do not allege that any words or images other than GB that might be misleading. Although Plaintiffs claim that Defendant seeks to "mislead the public" by selling its products "in sizes that are consistent with the base-2 system"—i.e., in "8 GB, 16 GB, 32 GB, 64 GB, 128 GB, and 256 GB sizes"—Plaintiffs fail to explain what is "misleading" about that choice. AC ¶ 32. It is undisputed that Defendant's products are compatible with both devices that use the base-2 system and devices that use the base-10 system. And Defendant is not alleged to have promised sufficient storage capacity for any particular device. All told, then, the disclosure that 1GB = 1,000,000,000 bytes does not "contradict other representations" or suggestions made on the packaging. *See Ebner*, 838 F.3d at 966. In other words, the disclosure serves not to "cure" but rather to "clarify" Defendant's use of the term GB.

That Defendant's disclosure does not attempt to correct a deceptive act also distinguishes the instant case from the district court decisions Plaintiffs cite. In all those cases, a disclaimer was made in "fine print" that sought to "contradict" rather than "confirm the expectations raised" by the large print. *Anthony v. Pharmavite*, No. 18-CV-02636-EMC, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019); (quoting *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 696 (Ct. App. 2018)); *see also Weisberg v. Takeda Pharm. Co. Ltd.*, No. CV 18-784 PA (JCX), 2018 WL 6219879, at *4 (C.D. Cal. May 7, 2018) ("Pay no more than $10" was not saved by the disclaimer, "Must meet eligibility requirements"); *Madenlian v. Flax USA Inc.*, No. SACV 13-01748 JVS, 2014 WL 7723578, at *3 n.3 (C.D. Cal. Mar. 31, 2014) ("All Natural" was not saved by the disclaimer

"Added Vitamins and Minerals"); *Johns v. Bayer Corp.*, No. 09CV1935 DMS (JMA), 2010 WL

2573493, at *4 (S.D. Cal. June 24, 2010) ("Supports prostate health" was not saved by "a

disclaimer on the back that the statement has not been evaluated by the FDA"). For instance, in

*Anthony*—the only case Plaintiffs discuss—the front of the labels declared that the products at

issue "May help support healthy hair, skin and nails." *Id.* The district court found this statement

to be misleading because the actual possibility of benefiting from the products is "vanishingly

small," "on the order of 0.00138 percent." *Id.* Accordingly, the court rejected defendant's attempt

to qualify the misleading statement with a disclaimer on the back of the label indicating that the

product "may help support healthy hair, skin, and nails *in those that are biotin deficient*." *Id.* at *3

(emphasis added). These cases are inapposite here, as Defendant's use of GB is not a deceptive

act.

Finally, Plaintiffs contend that Defendant's disclosure cannot be understood by a

reasonable consumer because 1GB = 1,000,000,000 bytes "does not mean anything to a

reasonable consumer." AC ¶ 22. For instance, if a consumer purchases a 4 GB drive, "she will

know that she received 4 billion bytes of storage capacity, but she will not know that her computer

thinks 4 GB is . . . 4,294,967,296 bytes." Opp. at 12. According to Plaintiffs, Defendant must

indicate the number of binary GBs that its products contain. This argument is without merit.

Plaintiffs' assertion that consumers understand gigabytes but not bytes is conclusory and

unfounded, and hence is not presumed true. It is also undercut by the Amended Complaint, which

alleges that "users of the Microsoft Windows operating system" will display file sizes in bytes, in

addition to binary KBs and binary MBs. AC ¶ 19. As the Court's first dismissal order held:

> To the extent Plaintiff could amend to allege that the reasonable
> consumer does not know how many bytes her *computer* requires (*i.e.*,
> how many bytes are in 64 binary GBs), Plaintiff's claims are more
> appropriately directed at the computer manufacturers. Sandisk, for its
> part, has done all the law requires it to do by telling the consumer how
> many bytes of storage each device provides.

First MTD Order at 12. Just so.

Thus, despite having amended their complaint, Plaintiffs have failed to a state a claim that

the packaging on Defendant's product—specifically, the product purchased by named Plaintiff

Dinan—is misleading under the UCL, FAL, and CLRA.

### ii. Safe Harbor

In addition, the Court finds that Plaintiffs' statutory claims are barred under California's safe harbor doctrine. Pursuant to this doctrine, Plaintiffs claims under the UCL, FAL, and CLRA are subject to dismissal as to all of Defendant's products.

Under the California Supreme Court's holding in *Cel-Tech Communications*, "courts may not use the unfair competition law to condemn actions the Legislature permits." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 182 (1999). The California Supreme Court explained:

> Although the unfair competition law's scope is sweeping, it is not unlimited. Courts may not simply impose their own notions of the day as to what is fair or unfair. Specific legislation may limit the judiciary's power to declare conduct unfair. If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination.

*Id.* In *Lopez v. Nissan N. Am., Inc.,* for instance, the California Court of Appeal applied the "safe harbor" doctrine of *Cel-Tech Communications* and dismissed plaintiff's UCL and CLRA claims "complaining about the accuracy of odometers that qualify as 'correct'" under California law. 201 Cal. App. 4th 572, 591-92 (2011). The odometers met the tolerances and other technical requirements for commercial weighing and measuring as recommended by NIST, which the California Legislature adopted to define whether a measuring instrument is "correct." *Id.* at 579, 590 (citing Cal. Bus. & Prof. Code §§ 12500(c), 12107).

Defendant argues that the safe harbor doctrine applies here because using the decimal meaning of GB is "clearly permitted" by the California Legislature. The Court agrees. California law provides that "[t]he definitions of basic units of weight and measure, and the tables of weight and measure and weights and measures equivalents, as published by the National Institute of Standards and Technology are recognized and shall govern . . . transactions in this state. Cal. Bus. & Prof. Code § 12313. As discussed above, NIST has been delegated authority by the U.S. Congress to develop national standards of measurement, including a standard interpretation of the metric system. *See Metric System of Measurement: Interpretation of the International System of*

*Units for the United States*, 63 Fed. Reg. 40334 (July 28, 1998). That interpretation provides that the SI prefixes "strictly represent powers of 10"—i.e., the base-10 system—and that it is "inappropriate to use them to represent powers of 2." The NIST interpretation further specifies that "giga" means $10^9$, or one billion. Accordingly, the decimal definition of "giga" is "recognized and shall govern" transactions in California under California Business and Professions Code § 12313.

Plaintiffs object that, pursuant to 15 C.F.R. § 10.9, the standards published by NIST are voluntary and have "no mandatory or legally binding effect." Opp. at 19. The argument misses the mark. Although "[a] voluntary standard *by itself* has no mandatory or legally binding effect," 15 C.F.R. § 10.9, NIST's standards may be made "binding" by another statute or regulation. One need not look any further than *Lopez* for an example. 201 Cal. App. 4th at 579. Here, California Business and Professions Code § 12313 adopts the "definitions of basic units of weight and measure, and the tables of weight and measure . . . published by" NIST. To the extent Plaintiffs argue that § 12313 does not make the NIST definitions "mandatory," this too is irrelevant. What Plaintiffs fail to recognize is that the safe harbor doctrine extends beyond "mandatory" regulations: It covers conduct that is "clearly permitt[ed]"—even if not required—by the California Legislature. *Cel-Tech Commc'ns*, 20 Cal. 4th at 183; *see Lopez*, 201 Cal. App. 4th at 579 ("In deeming qualifying odometers 'correct,' section 12500, subdivision (c) 'clearly permit[s]' their design."). In providing that the NIST standards "are recognized and shall govern" transactions in California, § 12313 clearly permits use of those standards.

The Court also takes account of other provisions of the California Business and Professions Code that evince approval of the metric system. *See* Cal. Bus. & Prof. Code § 12301 ("No contract or pleading is invalid or subject to objection because the weights or measures expressed or referred to therein are weights or measures of the metric system."); *id.* at § 12303 ("The state standards of weights and measures" include "Metrological standards provided by the United States."). In addition, the U.S. Congress has declared: "It shall be lawful throughout the United States of America to employ the weights and measures of the metric system; and no contract or dealing, or pleading in any court, shall be deemed invalid or liable to objection because

19

United States District Court
Northern District of California

1   the weights or measures expressed or referred to therein are weights or measures of the metric

2   system." 15 U.S.C. § 204. And, as noted above, the "preferred system of weights and measures

3   for United States trade and commerce" is the metric system, "as interpreted or modified" by NIST.

4   15 U.S.C. §§ 205b, 205c(4). Although these statutes may not, on their own, suffice to establish a

5   safe harbor, they support the Court's conclusion that the base-10 measure of "gigabyte" is "clearly

6   permitted" under California law.

7        The Court's conclusion is further supported by the decision of another court in this district.

8   In *Suzuki v. Hitachi Glob. Storage Techs., Inc.*, Judge Marilyn Hall Patel dismissed a nearly

9   identical false advertising claim as falling within the *Cel-Tech Communications* safe harbor

10  doctrine. No. C06-07289 MHP, 2007 WL 2070263, at *3 (N.D. Cal. July 17, 2007). There, as

11  here, plaintiff alleged that Hitachi's product packaging is misleading because it represents the

12  capacity of its hard disk drives in decimal GBs rather than binary GBs. *Id.* at *1. The court held

13  that "plaintiff's UCL claim fails under California's safe harbor doctrine because using decimal

14  notation to represent HDD capacity is clearly permitted by the legislature." *Id.* at *5. In so

15  holding, Judge Patel relied upon the same statutes and NIST standards at issue here. *Id.* at *3-*4.

16        Plaintiffs do not attempt to distinguish *Suzuki*; they simply argue that it was "wrongly

17  decided. Opp. at 16. According to Plaintiffs, the Court should instead look to *Talwar v. Creative

18  Labs, Inc.*, No. CV 05-3375 FMC AJWX, 2006 WL 4568797, at *3 (C.D. Cal. Aug. 11, 2006).

19  However, Plaintiffs are incorrect that "*Talwar* shows this case is meritorious." Opp. 17. In

20  *Talwar*, the complaint "did not complain only of Defendant's use the decimal GB's measure to

21  describe MP3 storage capacities"; rather, the complaint was aimed at "Defendant's potentially

22  confusing use of both binary and decimal measures in its advertising for its products." 2006 WL

23  4568797, at *3. The *Talwar* court concluded that any potential safe harbor for Defendant's use of

24  the decimal GB measure in certain advertising could not cover a theory that Defendant had caused

25  confusion by defining GB with the binary definition in other advertising. *Id.* Here, of course, no

26  such inconsistency has been alleged, wherefore *Talwar* does not conflict with this Court's holding.

27        Finally, Plaintiffs make much of the fact that in *Suzuki*, the safe harbor was not applied to

28  the plaintiff's claims under the FAL and CLRA. Opp. at 18. That is easily explained, however:

The defendant did not move to dismiss the FAL and CLRA claims on grounds of the safe harbor, choosing instead to argue a lack of causation or reliance. *See Suzuki*, 2007 WL 2070263, at *3. The *Suzuki* defendant likely did so because, as Defendant pointed out at the hearing, *Cel-Tech Communications* concerned only the UCL and *Lopez* (which applied *Cel-Tech Communications* to the CLRA) had not yet been decided. More importantly, Plaintiffs do not articulate any reason why the safe harbor would cover claims under the UCL and the CLRA but not the FAL. The principle undergirding *Cel-Tech Communications*—that a court cannot declare deceptive or misleading conduct that the Legislature has expressly permitted—has equal force as to the FAL. Here, Plaintiffs' FAL claims are based on the same theory as their UCL and CLRA claims and, in the Court's view, the safe harbor bars them as well.

In sum, the Court holds that using the decimal meaning of gigabyte is clearly permitted by the California Legislature. Plaintiffs' claims under the UCL, CLRA, and FAL are therefore barred by the safe harbor doctrine, and must be dismissed.

### iii. Leave to Amend

Having dismissed Plaintiffs' consumer protection claims, the Court must now decide whether to grant leave to amend. In determining whether to leave to amend is warranted, the Court considers the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2009). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Eminence Capital*, 316 F.3d at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *Id.*

At the outset, the Court notes that it previously dismissed named Plaintiff Dinan's claims under the reasonable consumer standard, and that Plaintiffs have already been given an opportunity to amend their complaint. Plaintiffs have failed to cure the deficiencies identified by the Court, and the Court is skeptical that Plaintiffs would be able to do so if given allowed to

amend their complaint again. In any event, the Court also dismissed Plaintiffs' UCL, CLRA, and FAL claims as to all plaintiffs under California's safe harbor doctrine. Plaintiff cannot cure this fatal defect with amendment. Because leave to amend would be futile, Counts 2, 3, and 4 are DISMISSED WITH PREJUDICE.

### B. Count 1: Breach of Contract

As for Count 1, the breach of contract claim, Defendant argues that dismissal is proper because "the Court already considered this claim and rejected it with prejudice." Mot. at 6.

As noted above, the Court's order on Defendant's motion to dismiss the original Complaint dismissed with prejudice Plaintiffs' claim for breach of contract. First MTD Order at 14. The Court explained:

> Plaintiff's theory of liability under his breach of contract claim is that "Defendant promised to provide a USB Flash Drive to Plaintiff with a storage capacity of 64 GBs in exchange for the purchase price," but did not live up to that promise. Opp. at 19 (citing Compl. ¶ 67). By this, Plaintiff means that Defendant promised to provide 64 binary GBs. But what Defendant actually promised, as expressly noted on the packaging, was 64 decimal GBs, wherein "1 GB = 1,000,000,000 bytes." Thus, Defendant provided exactly what was promised by the express terms of the agreement. Plaintiff's failure to read those terms does not provide him grounds for a breach of contract claim. *See Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("[F]ailure to read a contract before agreeing to its terms does not relieve a party of its obligations under the contract."); *see also Vernon v. Drexel Burnham & Co.*, 52 Cal. App. 3d 706, 714 (1975).

*Id.* at 13-14.

Plaintiffs nevertheless replead the breach of contract claim (Count 1) in the Amended Complaint. Defendant therefore renews its motion to dismiss Count 1 on the ground that "the Court already considered this claim and rejected it with prejudice." Mot. at 6. Although Plaintiffs oppose dismissal, they do not attempt to argue that the Amended Complaint cures the fatal defect in the original Complaint. As already discussed, Plaintiffs continue to acknowledge that all three products purchased by the named Plaintiffs display a disclosure that "1GB = 1,000,000,000 bytes" on the back of the packaging. *See, e.g.*, AC ¶ 36. Under these circumstances, the Court sees no cause to revisit its holding that Plaintiffs have failed to state a claim for breach of contract. Count 1 is again DISMISSED WITH PREJUDICE.

22

## V.  ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the Amended Complaint is DISMISSED WITH PREJUDICE.

Dated: January 22, 2020

BETH LABSON FREEMAN
United States District Judge